Loren HENNEKENS, Plaintiff-Appellant,

v.

Donald R. HOERL and St. Paul Fire & Marine Insurance Company, Defendants-Respondents.

Supreme Court

*No. 89–1508. Argued October 5, 1990.—Decided February 20, 1991.*

(Also reported in 465 N.W.2d 812.)

144

For the plaintiff-appellant there were briefs (in the court of appeals) by *David W. Neeb* and *Davis & Kuelthau, S.C.,* Milwaukee and oral argument by *Mr. Neeb.*

For the defendants-respondents there was a brief (in the court of appeals) by *Douglas J. Klingberg, Steven M. Anderson* and *Ruder, Ware & Michler, S.C.,* Wausau and oral argument by *Mr. Klingberg.*

LOUIS J. CECI, J.   This case is before the court on certification from the court of appeals, pursuant to sec. (Rule) 809.61, Stats. The plaintiff, Loren Hennekens (Hennekens), commenced an action for legal malpractice against the defendant, Donald R. Hoerl (Hoerl), and his malpractice insurer, St. Paul Fire & Marine Insurance Company (St. Paul), alleging that

Hoerl negligently failed to insert a financing contingency clause in a land purchase agreement.

Hennekens appeals from a judgment of the circuit court for Wood County, John V. Finn, Circuit Judge. The circuit court granted summary judgment in favor of Hoerl and St. Paul (collectively "the defendants"), dismissing the complaint filed against them. In granting summary judgment, the court ruled that the statute of limitations applicable to the claim Hennekens made against the defendants had run prior to the time Hennekens commenced the action. The court further held that the second ground advanced by the defendants for summary judgment, that Hennekens had suffered no actual damage, was without merit.[1]

There are two issues raised by this appeal. The first issue is when Hennekens suffered actual damage. The second issue is whether Hennekens knew or, in the exercise of reasonable diligence, should have known of his actual damage more than six years prior to the time he commenced this action.[2]

We hold that Hennekens suffered actual damage to his legal rights and interests on August 16, 1981, when he remained liable on the promissory note even though

---

[1]The defendants did not challenge, in the course of this appeal, the trial court's finding that Hennekens did suffer actual damage. Accordingly, we only address damages in the context of when Hennekens' claim for relief accrued, i.e., *inter alia,* when he suffered actual damage.

[2]The parties argue that sec. 893.52, Stats., is the statute of limitations applicable to a legal malpractice action. We disagree. The statute of limitations for legal malpractice actions which sound in tort is sec. 893.53, Stats. *Acharya v. Carroll,* 152 Wis. 2d 330, 337, 448 N.W.2d 275 (Ct. App. 1989). In this case, the result is the same whether sec. 893.52 or 893.53 applies because both are six-year statutes of limitations.

he could not receive the land. We also hold that Hennekens had sufficient notice as a matter of law of the damage to his legal rights and interests on October 13, 1981, when the seller's attorney threatened foreclosure on the note and mortgage by letter. We further hold that Hennekens' claim is barred by the statute of limitations as a matter of law because it was not commenced within six years of when it accrued: October 13, 1981. Accordingly, we affirm the judgment of the circuit court.

The facts of this case follow. The facts relevant to this appeal are not in dispute.[3] On July 17, 1981, Hennekens entered into a land purchase agreement. Hoerl represented Hennekens in the transaction. Under the agreement, Hennekens agreed to buy the land from one Gene Crotteau (Crotteau), free and clear of all encumbrances, for $225,000.00 and other consideration. Hennekens signed a promissory note for that amount due on or before August 16, 1981, and received a warranty deed subject to existing mortgages, judgments, and unpaid taxes. The note was secured by a mortgage on the property in question.

On the same date, Hennekens signed a separate agreement under which, upon closing of the land transaction, he would make a $14,500.00 payment to Crotteau on both the first and second anniversaries of the date of the agreement. These payments were additional consideration to compensate Crotteau for conducting preliminary studies to determine the suitability of the land in question for use as a sanitary landfill. That agreement stated: "In the event that the sale is not consummated, the property reverts to Crotteau, and this Agreement shall be null and void."

---

[3]While the facts are not in dispute, the parties draw competing inferences from the facts. These inferences will be analyzed in the discussion of the second issue.

Hennekens did not satisfy the promissory note. On October 13, 1981, Attorney Timothy Doyle wrote to Hennekens on behalf of Crotteau. In that letter, Attorney Doyle stated that Hennekens had not satisfied the note. He further stated:

> This payment is now almost two months past due, and you have done nothing to satisfy this obligation. As you well know, Mr. Crotteau's situation with regard to this particular real estate is really delicate. Unless you can pay this obligation in full within the next ten days or two weeks, it is very doubtful that this real estate will be available for your use at all.

> In order to protect his own position in this matter, I must recommend that Mr. Crotteau commence a foreclosure action against you on the note and mortgage which you signed. This we will proceed to do if we have not received payment from you by October 27.

The record shows that Attorney Doyle's reference to Crotteau's "really delicate" situation refers to Hennekens' knowledge that there were liens on the property he was buying which Crotteau intended to satisfy with the money Hennekens owed Crotteau.

Hennekens did not satisfy the note by October 27, 1981. However, Crotteau did not immediately commence a foreclosure action against Hennekens. It was not until August 19, 1985, that Crotteau filed an action on the promissory note. In the interim, Thorp Financing Corporation (Thorp) foreclosed on Crotteau's interest in the property in question.

In 1982, Hennekens purchased the property in question from Thorp for $68,700.00. On December 16, 1987, Crotteau obtained a judgment against Hennekens for $210,481.98. That was the amount Hennekens owed on

the note, plus pre-judgment interest, and less a credit for what he paid Thorp for the land.

The record shows that Hennekens incurred substantial attorney's fees in defending the action Crotteau brought against him on the promissory note. On August 5, 1988, Hennekens commenced this action against the defendants.

The defendants subsequently brought a motion for summary judgment against Hennekens, arguing that his claim was barred by the statute of limitations and that he did not have a claim for relief because he had not suffered any actual damage.[4]

The circuit court heard the motion for summary judgment on April 27, 1989. By order entered June 14, 1989, the circuit court granted summary judgment to the defendants, dismissing the complaint filed against them. In granting the motion, the court ruled that Hennekens' claim was barred by the statute of limitations. Hennekens appealed from the judgment of the circuit court, and the court of appeals certified the appeal to this court.

In reviewing the grant of a motion for summary judgment, this court applies the standards set forth in sec. 802.08(2), Stats., in the same manner as the circuit

---

[4]The defendants apparently did not realize when they made their summary judgment motion that the two grounds they advanced in support of their motion were mutually exclusive. If a party has not suffered any actual damage, then a cause of action has not accrued, and, therefore, the statute of limitations does not bar the action because it has not even begun to run. *See Barry v. Minahan,* 127 Wis. 570, 573, 107 N.W. 488 (1906). On appeal, the defendants adopted a consistent approach and argued that Hennekens had suffered actual damage over six years before he commenced his action against the defendants.

court. *Green Spring Farms v. Kersten,* 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987). When evaluating the propriety of a motion for summary judgment, the court employs a two-step procedure. First, the court examines the pleadings to determine whether a claim for relief has been stated. Second, if a claim for relief has been stated, the court then determines whether there are material issues of fact which preclude the grant of summary judgment. *Id.* at 314-15. If there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law, a motion for summary judgment should be granted. Section 802.08(2).

The first issue presented by this case is when Hennekens suffered actual damage as a result of Hoerl's alleged negligence. The facts relevant to this issue are undisputed. Furthermore, the parties do not draw competing inferences from the facts relevant to this issue. Accordingly, we must decide whether the defendants were entitled to judgment as a matter of law. Section 802.08(2), Stats.

A claim for relief accrues when "there exists a claim capable of present enforcement, a suable party against whom it may be enforced, and a party who has a present right to enforce it." *Barry v. Minahan,* 127 Wis. 570, 573, 107 N.W. 488 (1906).[5] A tort claim is not "capable of present enforcement" until the plaintiff has suffered actual damage.[6] Actual damage is harm[7] that has already

---

[5] Our holding in *Barry* was augmented by *Hansen v. A.H. Robins Co., Inc.,* 113 Wis. 2d 550, 335 N.W.2d 578 (1983), and its progeny which developed the application of the discovery rule to Wisconsin jurisprudence.

[6] As Dean Prosser explained, "Since the action for negligence developed chiefly out of the old form of action on the case, it

occurred or is reasonably certain to occur in the future. Actual damage is not the mere possibility of future harm. *Meracle v. Children's Serv. Soc.,* 149 Wis. 2d 19, 26–27, 437 N.W.2d 532 (1989).

The trial court found that Hennekens suffered an injury as a result of Hoerl's alleged negligence when he remained liable on the promissory note for $225,000.00 and did not receive the land he bargained for in exchange for the $225,000.00. The defendants agree with the trial court's finding and its conclusion that Hennekens suffered that damage prior to the date of Attorney Doyle's letter: October 13, 1981.

Hennekens contends that he did not suffer actual damage until August 19, 1985, when Crotteau filed suit against him on the promissory note and he incurred attorney's fees in defending against the suit. Hennekens reasons that he was not damaged prior to August 19, 1985, because he had suffered no monetary loss as of that date.

We disagree. Monetary loss is not the only form of actual damage. One form of actual damage is injury to a

---

retained the rule of that action, that proof of damage was an essential part of the plaintiff's case. Nominal damages, to vindicate a technical right, cannot be recovered in a negligence action, where no actual loss has occurred . . .. It follows that the statute of limitations is generally held not to begin to run against a negligence action until some damage has occurred." Prosser & Keeton, *The Law of Torts,* sec. 30 at 165 (5th ed. 1984). However, as Prosser notes, this requirement of actual damage in negligence cases does not prevent the issuance of injunctions under the proper circumstances. *Id.,* n.8.

[7]In the context of this opinion, the terms "harm," "injury," "loss," and "damage" all refer to the "actual damage" a plaintiff must suffer before he has a claim for relief against a negligent tort-feasor.

legal interest or loss of a legal right. Injury to a legal interest or loss of a legal right often occurs without a contemporaneous monetary loss. However, we have held that injury to a legal interest or loss of a legal right constitutes actual damage before such an injury or loss produces monetary loss. *See Boehm v. Wheeler,* 65 Wis. 2d 668, 223 N.W.2d 536 (1974).[8]

In *Boehm,* the plaintiffs brought two claims for legal malpractice against their attorneys. The first claim was for failing to file a patent application within one year after they were advised that the plaintiffs had sold a patentable good and placed it in public use. It was undisputed that such a failure precluded the plaintiffs from obtaining a patent on the good in question. *Boehm,* 65 Wis. 2d at 671-72.

The second claim was for incorrectly advising the plaintiffs that they could allow a third party to inspect an invention they developed without losing any common law trade secret rights in the invention. It was undisputed that the plaintiffs lost their common law trade secret rights in the invention by allowing the third party to inspect it. *Id.* at 672-73.

---

[8] Justice Abrahamson's dissent correctly points out that *Hansen v. A.H. Robins, Inc.,* 113 Wis. 2d 550, 560, 335 N.W.2d 578 (1983), overruled *Boehm*'s holding that the discovery rule does not govern when a claim for relief accrues in Wisconsin. However, *Hansen* did not overrule *Boehm*'s holding that a legal malpractice plaintiff may suffer actionable injury before the potential plaintiff suffers monetary loss. Accordingly, *Boehm* and *Denzer v. Rouse,* 48 Wis. 2d 528, 180 N.W.2d 521 (1970), the case *Boehm* relied upon, are still relevant to the issue of when a legal malpractice plaintiff suffered actual damage. In other words, *Boehm* and *Denzer* still govern when a legal malpractice plaintiff is injured even though the discovery rule as adopted in *Hansen* governs when a legal malpractice claim accrues.

We held that the first claim accrued on the day the plaintiffs lost the right to obtain a patent on the good: one year after the good was sold and placed in public use. We reasoned that the plaintiffs suffered actual damage on that date because "the loss of the right to a patent is the loss of the right to exclude others and, therefore, the injury occurred on [the] date the right to a patent was lost." *Id.* at 678.

We held that the second claim accrued when the invention was disclosed to the third party. In so holding, we expressly rejected the plaintiffs' contention that the claim did not accrue until the third party began marketing the product and the plaintiffs began to suffer a loss of the portion of profits or compensation they would have been entitled to as the inventors under trade secrets law. *Id.* We reasoned that the injury to the plaintiffs' legal interests occurred when they sent the models to the third party and thereby lost their common law trade secret rights even though the plaintiffs had not suffered monetary loss as of that date. *Id.* at 679.

Our rationale in *Boehm* applies to the case at bar despite the fact that, as Justice Steinmetz's dissenting opinion, at 179, points out, we strongly suggested that the plaintiffs in *Boehm* suffered no injury in regard to their second claim. While we did suggest that the plaintiffs did not suffer any injury related to their second claim, we held that the cause of action was barred by the statute of limitations. We expressly held that "the trial court's determinations as to when the causes of action accrued are correct." *Id.* at 678. Accordingly, the plaintiffs must have suffered some injury in regard to their second claim. Otherwise, their claim could not have accrued. *See Holifield v. Setco Industries, Inc.,* 42 Wis. 2d 750, 755-56, 168 N.W.2d 177 (1969) (holding that a cause of action, or claim for relief, does not accrue until

155

the plaintiff suffers actual damage), *overruled on other grounds, Hansen v. A.H. Robins Co., Inc.,* 113 Wis. 2d 550, 335 N.W.2d 578 (1983).

On August 16, 1981, Hennekens stood in the same position as the plaintiffs in *Boehm* on the date we held their claims accrued. Hennekens, like the plaintiffs in *Boehm,* followed poor legal advice and, as a result, lost a legal right. In *Boehm,* it was the patent and common law trade secret rights. In Hennekens' case, it was the right to rescind the transaction and avoid liability on the promissory note.

Justice Steinmetz's dissent, at 178, points out that the right Hennekens lost was not a property right. However, our holding in *Boehm* did not depend on the character of the right lost. Therefore, it is immaterial that the legal right lost in *Boehm* was a property right and the legal right lost in the case at bar is not a property right.

Accordingly, we are not persuaded by Justice Steinmetz's reliance on *Boehm* or by his reading of *Denzer v. Rouse,* 48 Wis. 2d 528, 180 N.W.2d 521 (1970). Dissenting opinion at 176–178. Due to the nature of the harm Hennekens suffered, it is irrelevant that Hennekens, unlike the plaintiffs in *Denzer,* did not consummate the real estate transaction by paying for and receiving the property.[9] The damage Hennekens suffered was not

---

[9]As set forth above, we are not persuaded by the distinction drawn in Justice Steinmetz's dissent between *Denzer* and the case at bar. Moreover, the dissent cannot rely on both *Denzer* and *In re Easterbrook,* 200 Cal. App. 3d 1541, 244 Cal. Rptr. 652 (1988). In California, the plaintiffs' claim in *Denzer* would not have accrued when they paid for and received the property and the warranty deed. Instead, their claim would have accrued nearly twenty years later when the ejectment action was brought by the third party and the plaintiffs incurred attorney's fees defending

being able to rescind the transaction and avoid liability on the note when he could not receive the property he purchased with the note. In contrast, the underlying theory of malpractice in *Denzer* was that the attorney did not correctly describe property in a warranty deed, resulting in the plaintiffs being ejected from the property by a third party some twenty years after they paid for and received the property and the negligently drafted warranty deed.

The relevant similarity between Hennekens and the plaintiffs in *Denzer* is that both suffered actual damage to their legal rights and interests when they received negligently drafted legal documents. In *Denzer,* the negligently drafted document was the warranty deed with an incorrect description of the property. *Id.* at 530. In the case at bar, the negligently drafted documents were the land purchase agreement and promissory note without financing contingency clauses.

The lack of the financing contingency clauses and the right to rescind which accompanies such clauses harmed Hennekens' legal rights and interests on the date the promissory note was due: August 16, 1981. On that date, Hennekens remained liable on the note notwithstanding the fact that he had not received, and could not receive, clear title to the land.

Such liability is actual damage under *Denzer.* The plaintiffs in *Denzer* did not become involved in litigation and incur attorney's fees until nearly twenty years after

---

the action. Accordingly, the plaintiffs' action in *Denzer* would not have been time-barred in California. *See, e.g., Horne v. Peckham,* 97 Cal. App. 3d 404, 158 Cal. Rptr. 714 (1979) (holding that a malpractice claim for negligently drafting a trust accrued when the client incurred attorney's fees defending the trust). The disadvantages of the California approach will be discussed below.

they received the faulty warranty deed and a third party brought an ejectment action. *Denzer*, 48 Wis. 2d at 530. However, we still held that their claim for malpractice accrued when they received the faulty warranty deed and the property. *Id.* at 533. Similarly, Hennekens did not incur attorney's fees until 1985 even though his legal rights and interests suffered actual damage in 1981. Accordingly, on August 16, 1981, Hennekens stood in the same position as the plaintiffs in *Denzer* when they received the defective warranty deed.

Hennekens ignores *Boehm* and *Denzer*[10] and cites authority from other jurisdictions which hold that a claim for legal malpractice does not accrue until the plaintiff/client incurs legal fees defending a lawsuit caused by the malpractice or until such litigation reaches final appellate resolution.[11] We decline to overrule *Boehm* and *Denzer* in order to follow the cases cited by Hennekens.

The rule advanced by the cases Hennekens cites conflicts with the:

> equitable principle underlying the statute of limitations, which is to allow plaintiffs their day in court, but also to protect defendants from having to deal with claims which defense against may be seriously impaired by stale or lost evidence.

[10]Interestingly, the defendants, like Hennekens, do not cite *Boehm* or *Denzer*. However, this court is not limited to considering the authority cited to it by the parties. This court has the inherent authority to conduct its own research to augment the briefs submitted by the parties.

[11]Hennekens cites *Horne v. Peckham*, 97 Cal. App. 3d 404, 158 Cal. Rptr. 714 (1979); *Richards Enterprises, Inc. v. Swofford*, 495 So. 2d 1210 (Fla. App. 5 Dist. 1986); *Fliegel v. Davis*, 73 Or. App. 546, 699 P.2d 674 (1985).

158

*Spitler v. Dean,* 148 Wis. 2d 630, 636, 436 N.W.2d 308 (1989). Determining when a claim accrues involves:

> balancing the plaintiff's right to seek redress against the duration of the defendant's exposure to liability and the possible prejudices due to delay. Both are concerns of justice.

*Id.*

The cases cited by Hennekens advance a rule that does not protect defendants from the prejudice caused by delay, such as stale or lost evidence. For example, if we adopted the rule that a legal malpractice plaintiff's claim does not accrue until the plaintiff/client incurs legal fees defending a suit caused by the malpractice, it is possible that the statute of limitations on a claim like Hennekens' would not run until twelve years after the note was due.[12] Furthermore, if we adopted the rule that a legal malpractice claim does not accrue until final appellate action on litigation caused by the malpractice ceases, it is possible that the statute of limitations on a claim like Hennekens' would not run until fifteen years after the note was due.[13]

*Boehm* better preserves the balance between the rights of plaintiffs and defendants than the rules

[12]The twelve-year figure is based upon the following calculation. First, a creditor has six years to commence an action on a promissory note. Section 893.43, Stats. At that time, the malpractice claim would accrue under the cases cited by Hennekens. However, the plaintiff/client would then have six years from that date to commence the malpractice action. Section 893.53, Stats.

[13]The fifteen-year figure is based upon the calculation in n.12 and the assumption that it could easily take three years, and probably much longer, for a legal malpractice action to proceed from the filing of the complaint to the cessation of appellate action.

159

advanced by the cases cited by Hennekens. Accordingly, we hold that Hennekens suffered actual damage as a matter of law on August 16, 1981.

However, his claim did not necessarily accrue on that date. In Wisconsin, a claim for relief does not accrue until the potential plaintiff knows of[14] or, in the exercise of reasonable diligence, should have discovered his " 'injury, its nature, its cause, and the identity of the allegedly responsible defendant.' " *Spitler,* 148 Wis. 2d at 635 (emphasis omitted) (quoting *Borello v. U.S. Oil Co.,* 130 Wis. 2d 397, 420, 388 N.W.2d 140 (1986)). Therefore, the second issue presented by this appeal is whether Hennekens knew of or, in the exercise of reasonable diligence, should have discovered his injury more than six years before he commenced his action against the defendants.

The trial court found that Hennekens' claim accrued on the date he received the demand letter from Crotteau's counsel: October 13, 1981. The trial court reasoned that as of that date, Hennekens knew:

> the negligent act, namely the representation by the Defendant-Attorney, the injury and its nature, namely that he was subject to a liability on a note and could not receive clear title to the real estate, the cause, namely the fact that there was no provision made at the July 17, 1981 meeting for the possibility that the Plaintiff may be unable to obtain financing, and the identity of the Defendant.

---

[14]A claim accrues when the potential plaintiff knows to a reasonable probability the existence of his injury, its nature, its cause, and the identity of the allegedly responsible defendant. *Borello v. U.S. Oil Co.,* 130 Wis. 2d 397, 420, 388 N.W.2d 140 (1986).

160

The defendants agree with the trial court. On the other hand, Hennekens contends that as of October 13, 1981, he reasonably could have inferred that the transaction was void and, therefore, he no longer had to satisfy the promissory note. In the alternative, Hennekens contends that regardless of whatever injury he should have been aware of as of October 13, 1981, he cannot, as a layman, reasonably be expected to know the cause of that injury: his attorney's failure to include a financing contingency clause in the land purchase agreement.

We agree with the trial court that Hennekens' claim accrued on October 13, 1981, but disagree with the trial court's reasoning.[15] Ordinarily, the issue of whether a plaintiff exercised reasonable diligence is a question of fact. *Spitler,* 148 Wis. 2d at 638 (citing *Borello,* 130 Wis. 2d at 404). However, when the facts and reasonable inferences that can be drawn from the facts are not in dispute, whether a plaintiff has exercised reasonable diligence is a question of law. *See, e.g., Borello,* 130 Wis. 2d at 414 (holding that the plaintiff was reasonably diligent as a matter of law); *Tallmadge v. Skyline Construction, Inc.,* 86 Wis. 2d 356, 359–60, 272 N.W.2d 404 (Ct. App. 1978) (holding under legislatively created definition of accrual that evidence was sufficient to alert the plaintiff to the possibility of injury as a matter of law).

---

[15]There is no evidence in the record to support the trial court's finding that on October 13, 1981, Hennekens knew he was liable on the note whether or not he received the land and that the cause of that liability was Hoerl's failure to insert a financing contingency clause in the land purchase agreement. Nevertheless, we affirm the trial court's grant of summary judgment for the reason set forth below.

The facts relevant to this issue are not in dispute. However, the parties draw competing inferences from the facts. Whether an inference is reasonable is a question of law. *See, e.g., Wengerd v. Rinehart,* 114 Wis. 2d 575, 583, 338 N.W.2d 861 (Ct. App. 1983) (holding that whether parties should have known their motion had no reasonable basis in law or equity is a question of law if the facts are undisputed). Accordingly, if only one inference can reasonably be drawn from the undisputed facts in the record, we may decide whether Hennekens was reasonably diligent as a matter of law. *Borello,* 130 Wis. 2d at 414.

Hennekens contends it was reasonable for him to infer the transaction was void and ignore Attorney Doyle's October 13, 1981, letter threatening foreclosure on the note and the mortgage. We disagree.[16] In *Spitler,*

---

[16]The inferences drawn from the circumstances surrounding Attorney Doyle's October 13, 1981, demand letter by Justice Abrahamson's dissent are not reasonable as a matter of law. Any inferences drawn from the fact that a copy of Attorney Doyle's letter was sent to defendant Hoerl would only support a theory of continuing negligence or equitable estoppel. Neither theory was presented to this court by Hennekens.

Furthermore, it is unreasonable as a matter of law for a lay person to infer that a demand letter is an idle threat without consulting an attorney. The only authority cited by Justice Abrahamson, 2 R.E. Mallen & J.M. Smith, *Legal Malpractice* (3d ed. 1989), regarding this inference actually supports the majority. The treatise states that in discovery rule jurisdictions the plaintiff is "charged with the actual knowledge of facts which could have been obtained by due diligence and through the use of means available." *Id.,* sec. 18.15 at 138. The treatise further states that whether a legal malpractice plaintiff should have discovered his attorney's wrongful conduct "raises an issue of fact. . . . Summary judgment, however, is proper where there is actual knowl-

we explained that reasonable diligence:

> means such diligence as the great majority of persons would use in the same or similar circumstances. *See Hilker v. Western Automobile Ins. Co.,* 204 Wis. 1, 15, 231 N.W. 257, 235 N.W. 413 (1931) (opinion on reconsideration). Plaintiffs may not close their eyes to means of information reasonably accessible to them and must in good faith apply their attention to those particulars which may be inferred to be within their reach. *See Kanack v. Kremski,* 96 Wis. 2d 426, 432, 291 N.W.2d 864 (1980).

*Spitler,* 148 Wis. 2d at 638.

Neither this court nor the court of appeals has applied our explication of the meaning of reasonable diligence in *Spitler.* However, at least one other jurisdiction which follows our formulation of the discovery rule has held that a claim accrued in a situation similar to that which the record shows existed in the case at bar on

---

edge of facts or undisputed access to those facts." *Id.,* sec. 27.22 at 692.

In the case at bar, it is undisputed that Hennekens received Attorney Doyle's October 13, 1981, demand letter and did nothing in response until 1985 when the seller brought a foreclosure action on the note. He did not contact an attorney who could have brought a declaratory judgment action on the note and pled the malpractice action in the alternative as described below.

Instead, he ignored a demand contrary to his interests as did the plaintiff in *Knauber v. Smith and Schnacke,* 42 Ohio App. 3d 1, 536 N.E.2d 403 (1987)—a case ignored by Justice Abrahamson's dissent. Accordingly, we hold that he, like the plaintiff in *Knauber,* did not exercise reasonable diligence. In the words of the treatise Justice Abrahamson's dissent relies upon, Hennekens "should be charged with the actual knowledge of facts which could have been obtained by due diligence . . .." 2 Mallen & Smith, *Legal Malpractice,* sec. 18.15 at 138.

October 13, 1981. *See Knauber v. Smith and Schnacke,* 42 Ohio App. 3d 1, 536 N.E.2d 403 (1987).

In *Knauber,* one Thaler invested in real estate with one Knauber. Thaler and Knauber held the real estate as tenants in common. Thaler directed her attorney, the defendant, to draw a codicil to her will to leave her interest in the real estate to Knauber. Subsequently, Thaler and Knauber formed a partnership to further their real estate enterprise. At Knauber's request, the attorney who drafted the partnership agreement had not previously represented either Knauber or Thaler. After Thaler's death, her executrix demanded the dissolution of the partnership as Thaler's successor. When the partnership was dissolved, Knauber did not receive the real estate he seemingly was entitled to under the codicil because it did not take into account the partnership agreement. *Id.,* 42 Ohio App. 3d at 1-3, 536 N.E.2d at 404–06.

Subsequent to litigation over the dissolution of the partnership, Knauber commenced a malpractice action against Thaler's attorney as a third-party beneficiary of her will on the theory that the attorney should have drafted the codicil to take into account the partnership agreement. The defendant moved to dismiss on the grounds that the action was barred by the statute of limitations. *Id.,* 42 Ohio App. 3d at 4-5, 536 N.E.2d at 406–07.

The court agreed the action was time-barred. In reaching that conclusion, the court held that Knauber's claim accrued[17] the day he received a letter from Thaler's

---

[17]Under Ohio law, a legal malpractice claim "accrues and the statute of limitations begins to run when a client discovers, or in the exercise of reasonable care and diligence should have discovered, the resulting injury." *Knauber,* 42 Ohio App. 3d at 5, 536 N.E.2d at 407.

executrix demanding the dissolution of the partnership. The court reasoned that the letter put Knauber on "notice that the partnership agreement could defeat Thaler's bequest to him . . .." *Id.*, 42 Ohio App. 3d at 5, 536 N.E.2d at 407.

In the case at bar, on October 13, 1981, Hennekens stood in the same position as the plaintiff in *Knauber* on the day his claim accrued. On October 13, 1981, Hennekens, like the plaintiff in *Knauber,* received notice that someone was asserting a claim against him.

Hennekens should have contacted an attorney in response to Attorney Doyle's October 13, 1981, letter threatening foreclosure on the mortgage and note. It was unreasonable for Hennekens to infer that the transaction was null and void when the seller was threatening foreclosure of both the mortgage and the promissory note despite the fact that Hennekens had not received clear title to the land.

Hennekens contends that contacting an attorney upon receipt of Attorney Doyle's letter would not have accomplished anything because his liability on the note was not certain as of October 13, 1981. The Steinmetz dissent makes a similar argument when it contends, at 175, that in 1981 Hennekens faced merely the possibility of future harm in the form of action on the note by the seller, Crotteau. We disagree.[18]

---

[18]In making this argument, the dissent overlooks the fact that it was no more certain that a third party would bring an ejectment action against the plaintiffs in *Denzer* at the time they received the warranty deed than it was certain that Crotteau would bring an action on the note when Hennekens failed to satisfy the note. In fact, the record suggests the opposite.

A plaintiff may recover for " '*reasonably certain*
injurious consequences of the tortfeasor's negligent con-
duct, not for merely *possible* injurious consequences.' "
*Meracle,* 149 Wis. 2d at 27 (emphasis added) (quoting
*Brantner v. Jenson,* 121 Wis. 2d 658, 663-64, 360
N.W.2d 529 (1985)). In this context, "reasonably cer-
tain" means "reasonably probable." *See, e.g., Brantner,*
121 Wis. 2d at 665-66 (referring to the terms "reasona-
ble degree of medical certainty" and "reasonable degree
of medical probability" interchangeably).

On August 16, 1981, it was probable that Crotteau
would bring an action on the note against Hennekens
because, as the record shows, Crotteau needed the money
Hennekens owed him on the note to satisfy liens against
the property. The record shows that Hennekens knew
that Crotteau needed the money to satisfy liens against
the property, and Hennekens was reminded of that need
in Attorney Doyle's letter of October 13, 1981. Further-
more, in the same letter, Doyle threatened Hennekens
with an action on the note and the mortgage. Therefore,
in 1981, it was probable that Crotteau would bring an
action on the note against Hennekens, and, as previously
discussed, Hennekens had sufficient notice of his injury
under *Knauber.*

Moreover, as counsel for the defendants pointed out
at oral argument, an action for declaratory judgment
could have been filed by any attorney contacted by Hen-
nekens to determine Hennekens' rights and obligations
under the promissory note.[19] Hennekens could have
made the defendants parties to the declaratory judgment
action under sec. 803.04(1), Stats., by alleging in the
alternative that either he is not liable on the promissory

---

[19]See sec. 806.04, Stats.

note or that, if he is liable on the note, the defendants are liable to him for the amount of his liability on the note.[20] In this manner, Hennekens could have determined his liability on the note while not sleeping on his right to bring a malpractice action against the defendants.

Instead of contacting an attorney to determine why Crotteau was pressing for payment for land Hennekens had not received, Hennekens simply ignored the October 13, 1981, demand letter. He did not exercise "such diligence as the great majority of persons would use in the same or similar circumstances." *Spitler,* 148 Wis. 2d at 638. Instead, Hennekens closed his "eyes to means of information reasonably accessible" to him, *id.,* namely, the information an attorney could have provided him regarding his liability on the promissory note and the October 13, 1981, demand letter. Hennekens did not "in good faith apply [his] attention to those particulars which may be inferred to be within [his] reach." *Id.* Hennekens should have inferred that the deal was not null and void, at least in the eyes of the seller, and that he should contact an attorney to determine the status of the transaction.

We hold that as a matter of law, Attorney Doyle's October 13, 1981, letter constituted sufficient notice to

---

[20]At oral argument, the defendants suggested joinder under sec. 803.03, Stats. While not passing on the question of whether doing so would be correct, we note that sec. 803.04 seems more appropriate for two reasons. First, it allows pleading that defendants are liable in the alternative. Section 803.04(1), Stats. Second, it allows for separate trial on the alternative claim. Section 803.04(4). Therefore, the declaratory judgment action concerning the note could be heard before the malpractice action, assuming the malpractice action would be necessary.

Hennekens of his injury so that his claim for relief accrued as of that date.[21] We also hold that as a matter of law it was unreasonable for Hennekens to infer that the transaction was void after he received Attorney Doyle's letter of October 13, 1981. We further hold that Hennekens' claim is time-barred because he did not commence this action within six years of October 13, 1981. Accordingly, we affirm the judgment of the circuit court which granted summary judgment in favor of the defendants.

*By the Court.*—The judgment of the circuit court is affirmed.

SHIRLEY S. ABRAHAMSON, J. (dissenting). I agree with the holding of the majority opinion that the discovery rule is applicable for determining the accrual of the cause of action of attorney malpractice. I part company with the majority opinion in its determination as a matter of law that the plaintiff discovered or with reasonable diligence should have discovered his injury upon receipt of the October 13, 1981 letter. I do not believe that the plaintiff's discovery of his injury can be decided as a matter of law on summary judgment under the facts of this case.

*Discovery Rule.* Application of statutes of limitation to legal malpractice actions presents difficult

---

[21]Justice Abrahamson's dissent, at 171, asserts that "[t]he majority opinion concludes that the plaintiff in this case discovered his injury, as a matter of law, when he received" Attorney Doyle's demand letter of October 13, 1981. We do not hold that Hennekens discovered his injury on October 13, 1981. Rather, we hold that Hennekens had sufficient notice of his claim as of that date because he would have discovered his injury if he had exercised reasonable diligence, to wit, contacted an attorney, in response to Attorney Doyle's letter of October 13, 1981.

168

problems. Courts have approached the problem of accrual of statutes of limitations in legal malpractice actions in a number of different ways. Courts have viewed the cause of action as accruing, for example, when the negligent act occurred (occurrence rule), when the client suffered injury (damage rule), when the attorney-client relationship terminated, or when the client discovered the essential facts constituting a cause of action (discovery rule).

The trend in the cases is away from the harsh occurrence or damage rule, in which the statute of limitations starts to run on the date of the negligent act or of the injury, regardless of the client's knowledge of the act or injury, toward the discovery rule. Under the discovery rule, the statute of limitations starts to run when the plaintiff has actual or imputed knowledge of the facts constituting a cause of action for malpractice, that is, "when the plaintiff has actual or imputed knowledge of the attorney's act or omission, the wrongful nature, and the fact of injury . . .." 2 R.E. Mallen & J.M. Smith, *Legal Malpractice* sec. 18.15, p. 137 (3d ed. 1989).

I agree with the majority that "a claim for relief does not accrue until the potential plaintiff knows of or, in the exercise of reasonable diligence, should have discovered his injury, its nature, its cause, and the identity of the allegedly responsible defendant.' " Majority op. at 160 (citations omitted).

This court applied the "damage rule" in *Boehm v. Wheeler,* 65 Wis. 2d 668, 676-677, 223 N.W.2d 536 (1974), refusing to adopt the discovery rule or a theory of "continuous representation."[1] Determining the date of

---

[1] Only limited reliance can be placed on *Boehm,* because the *Hansen* case expressly overruled "all cases holding that tort claims accrue at the time of the negligent act or injury." *Hansen v. A.H. Robins, Inc.,* 113 Wis. 2d 550, 560, 335 N.W.2d 578 (1983).

injury under the damage rule can be troubling, as *Boehm,* the majority opinion, and the other dissenting opinion demonstrate. "An attorney's error may create only the potential for injury. The determinative inquiry is whether the realization of that potential for damage depends upon whether future events will occur, or whether future events, certain to occur, will disclose whether there is in fact present injury. The latter situation raises a question of tolling in a discovery rule jurisdiction." 2 R.E. Mallen & J.M. Smith, *Legal Malpractice* sec. 18.11, p. 107.

The other dissenting opinion contends that in this case actual damage did not occur until the plaintiff was forced to pay attorney's fees to defend the action on the promissory note. Though some decisions support this interpretation of when damage occurs, I believe that such problems can best be handled under the discovery rule. I agree with the authors of a treatise on legal malpractice who, when discussing a case involving a real estate transaction, conclude, "Although the defect in title can be rationalized upon the contingency that there is no actual damage until a challenge is made, the better rationale is the lack of discovery. A client aware of the defect would undoubtedly have a viable legal malpractice action notwithstanding the absence of an adverse claimant." 2 R.E. Mallen and J.M. Smith, *Legal Malpractice,* sec. 18.11, p. 107, n.27.

After *Boehm,* this court applied the discovery rule in certain tort claims. Under the discovery rule, the tort claim accrues on the date "the injury is discovered or with reasonable diligence should be discovered, whichever occurs first." *Hansen v. A.H. Robins, Inc.,* 113 Wis. 2d 550, 560, 335 N.W.2d 578 (1983).

For a discussion of the continuous representation rule, see 2 R.E. Mallen & J.M. Smith, *Legal Malpractice* sec. 18.12.

The case at bar is the first case in which this court applies the discovery rule to a legal malpractice claim. I join the majority in holding that the discovery rule is applicable in legal malpractice cases.

*Summary Judgment.* The majority opinion concludes that the plaintiff in this case discovered his injury, as a matter of law, when he received a letter from an attorney approximately two months after the real estate transaction was to have been completed.[2] I conclude that the question of whether the plaintiff knew or should have known of the injury on receipt of the letter

---

[2]The entire letter is as follows:

October 13, 1981

Mr. Loren Hennekens
Star Route
Sarona, WI 54870

RE: Mortgage and Note to Gene Crotteau

Dear Mr. Hennekens:

As you are well aware, I represent Mr. Crotteau in this transaction. In exchange for a deed to the landfill property, you gave Mr. Crotteau a note for $225,000 payable on or before August 16, 1981. That note is secured by a mortgage on the real estate which he deeded you.

This payment is now almost two months past due, and you have done nothing to satisfy this obligation. As you well know, Mr. Crotteau's situation with regard to this particular real estate is really delicate. Unless you can pay this obligation in full within the next ten days or two weeks, it is very doubtful that this real estate will be available for your use at all.

In order to protect his own position in this matter, I must recommend that Mr. Crotteau commence a foreclosure action against you on the note and mortgage which you signed. This we will proceed to do if we have not received payment from you by October 27.

Very truly yours,

Timothy M. Doyle

is a question of fact for the fact-finder, not a question of law for the court. I would therefore deny summary judgment and remand for a determination of the date of discovery of the injury by the fact-finder.

Summary judgment is appropriate when only an issue of law is involved. Summary judgment is not appropriate when an issue for a fact-finder exists. We set forth the general rules for summary judgment in *Grams v. Boss,* 97 Wis. 2d 332, 338–339, 294 N.W.2d 473 (1981). Summary judgment is appropriate when there is no disputed issue of material fact. If material facts are disputed, if there are undisputed facts from which reasonable alternative inferences may be drawn, or if the material presented on the motion is subject to conflicting interpretations or reasonable people might differ as to its significance, summary judgment is improper.

The discovery rule sets forth a "reasonable person" standard (an objective standard). Applying the legal standard to the facts, even undisputed facts, for purposes of the discovery rule is ordinarily an issue of fact for the fact-finder.[3] Whether the plaintiff knew or a reasonable person should have known of the injury may be decided as a matter of law when a court can say that there is only one reasonable conclusion to be drawn from the undisputed facts.[4]

---

TMD:phs
cc:    Gene Crotteau
        Mike Luckterhand
        Donald Hoerl

[3]See, *e.g., Spitler v. Dean,* 148 Wis. 2d 630, 638, 436 N.W.2d 308 (1989), where we concluded that the issue of whether the plaintiff exercised reasonable diligence to discover the identity of the defendant was for the fact-finder and remanded the case.

[4]I believe that determining the date of accrual of the statute

The question, then, in this case is whether reasonable persons could draw competing reasonable inferences or conclusions regarding the date of plaintiff's discovery.

I conclude that reasonable people can reach different conclusions from this record about when the plaintiff knew or should have known of his injury. The fact-finder could conclude from the evidence relating to the original transaction that the plaintiff believed the transaction was void and that he had no liability because he could not get financing.[5] The fact-finder could conclude that the October 13, 1981, letter was unclear and would not necessarily have disabused the plaintiff of the idea that he had no liability. The fact-finder might think that attorneys, and others, sometimes threaten legal action

of limitations under the discovery rule in a negligence action presents the same division of responsibility between circuit court, this court and the fact-finder as the determination of negligence in the underlying action. While the standard of conduct required in a certain situation is determined by the court, it is the function of the fact-finder to apply that standard to the facts of the case to determine whether the person conformed to the standard. Prosser & Keeton, *The Law of Torts,* sec. 37 (5th ed. 1984) p. 235. However, if the court decides there is only one reasonable conclusion to be drawn regarding whether a person's conduct conformed to the standard, the court may take the issue for the fact-finder and decide the question as a matter of law. Restatement (2d) of Torts, sec. 328B, Comment on clause (d), p. 154, sec. 328C, Comment on clause (b), pp. 155–156 (1965).

For a discussion of summary judgment and discovery rule, see 2 R.E. Mallen & J.M. Smith, *Legal Malpractice,* pp. 138, 692.

[5]The plaintiff signed a separate agreement at the same time he signed the promissory note, providing additional payments for Crotteau in exchange for studies he was to do on the suitability of the property for a landfill. The agreement stated that "In the event that the sale is not consummated, the property reverts to Crotteau, and this Agreement shall be null and void."

when they have no intention of following through on their threat. A reasonable person might have thought this a "dunning" letter, sent in the hopes that it would induce the plaintiff to come up with the money, but that it represented an empty threat. The fact that nothing happened on the date of the threatened foreclosure—plaintiff was not sued on the note until four years after the letter—might have confirmed the plaintiff's reasonable belief that the transaction was void. The fact-finder might also decide that since a copy of the letter was sent to the plaintiff's attorney, it was reasonable for the plaintiff to conclude that if there was any substance to the claim his attorney would have notified him. Or the fact-finder might have found that the plaintiff failed to exercise reasonable diligence in investigating the letter and discovering his liability. The question, however, is not what this court thinks a fact-finder would decide, but whether the issue of discovery should go to the fact-finder in this case. I conclude it should.

For these reasons, I would deny summary judgment in this case and remand the cause.

STEINMETZ, J. (dissenting). I disagree with the majority's analysis and conclusion and therefore dissent. Specifically, my dissent is based on the majority's determination that the plaintiff sustained actual damage in 1981 as a result of legal malpractice by the defendant. Because I consider that the plaintiff did not sustain actual damage until 1985, from which it follows that the plaintiff could not have discovered any actual damage until that time, I would reverse the decision of the circuit court holding that the plaintiff's action is time barred.[1]

---

[1] *Denzer v. Rouse,* 48 Wis. 2d 528, 532-33, 180 N.W.2d 521 (1970), indicates that the statute of limitations on a legal malpractice action begins to run from the time of actual damage.

Actual damages are an essential element to an action for legal malpractice. *Widemshek v. Fale,* 17 Wis. 2d 337, 340, 117 N.W.2d 275 (1962). Until a party sustains actual damage, the statute of limitations on an action does not accrue. *Denzer v. Rouse,* 48 Wis. 2d 528, 532-33, 180 N.W.2d 521 (1970). In this connection, it must be emphasized that the mere possibility of future damage does not constitute actual damage. *Meracle v. Children's Serv. Soc.,* 149 Wis. 2d 19, 27, 437 N.W.2d 532 (1989).

---

This rule can be known as the "damage rule," and is referred to as such by the other dissent. In *Hansen v. A.H. Robins, Inc.,* 113 Wis. 2d 550, 560, 335 N.W.2d 578 (1983), we adopted the "discovery rule," which says that the statute of limitations begins to run at the time the plaintiff discovers, or through the use of reasonable diligence should discover, that he has been damaged. Although *Hansen* was not a legal malpractice action, we "adopt[ed] the discovery rule for all tort actions other than those already governed by a legislatively created discovery rule." *Id.* Accordingly, the rule is applicable to legal malpractice cases.

Clearly, the "discovery rule" is merely a hybrid version of the "damage rule" and completely consistent with it in theory and application. Under either rule, damages must exist before the statute of limitations begins to run. This was recognized by the California Supreme Court in *Budd v. Nixen,* 6 Cal. 3d 195, 98 Cal. Rptr. 849, 491 P.2d 433 (1971), which held that, although the statute of limitations in legal malpractice actions begins to run from the time of discovery, a cause of action for legal malpractice does not accrue until the plaintiff suffers damage. Thus, the arguments of the majority and other dissent are mistaken insofar as they would suggest that the application of the "discovery rule" means that damage does not need to exist before the statute of limitations begins to run. Absent a statutory provision to the contrary, the point at which any damage arose is always the fundamental question. There must be damage before the discovery rule can come into effect.

I submit that the plaintiff in this case did not sustain actual damage until 1985 when he incurred the cost of his legal defense in the action brought against him by the land seller. The only "damage" he suffered in 1981 and until 1985 was the mere possibility of future damage, the mere possibility that the seller of the land might bring an action against him requiring him to sustain, at the very least, damages related to his legal defense. The statute of limitations could not begin to run until he actually incurred that damage and, *a fortiori*, discovery of his injury could not commence until at least that point in 1985. Thus, his claim is not time barred. The truth of my position is made clear by the fact that, had the plaintiff attempted to bring an action for legal malpractice against his attorney in 1981, the action would have been denied by the trial court for failure to state a claim for which relief might be granted; there simply was no legally cognizable relief available to the plaintiff at that time because no actual damage had yet resulted to him.

The majority argues that the plaintiff suffered damage by virtue of "not being able to rescind the transaction and avoid liability on the note when he could not receive the property he purchased with the note." Majority op. at 156–157. The majority fails to acknowledge that the plaintiff's "liability on the note" was potentially only a paper tiger. The "liability" was based upon the mere possibility that the land seller would bring an action against the plaintiff. Until 1985, when the land seller brought such an action, only that mere possibility existed, and that mere possibility itself would eventually have been extinguished by the statute of limitations governing the injury claimed by the land seller.[2]

---

[2]In addition, for all that both the plaintiff and land seller knew, the plaintiff might have been successful in defending against any action brought against him by the land seller. Specifi-

Moreover, as a practical matter, the majority is simply mistaken when it asserts that the plaintiff "could not receive the property." In fact, the plaintiff did receive the very same property, having purchased it from the finance company in 1982 after the finance company foreclosed on it against the original land seller. Not only did he purchase the property, he did so on terms much more favorable than he would have gained had he purchased the property from the original land seller, purchasing it at the rate of interest of only five percent. Given that the judgment obtained against the plaintiff by the original land seller was reduced by the amount the plaintiff paid the finance company for the land, it is conceivable that the plaintiff might not have suffered any damage at all, although the defendants on appeal have not challenged the plaintiff's claim of actual damage. In other words, the purchase of the property by the plaintiff means, as a practical matter, that the only possible damage that the plaintiff suffered arose in 1985 pursuant to his legal defense.

The majority relies heavily, and erroneously, upon *Denzer,* 48 Wis. 2d 528, and *Boehm v. Wheeler,* 65 Wis. 2d 668, 223 N.W.2d 536 (1974). Both of these cases are quite distinguishable from the instant case, primarily because of the distinct nature of the malpractice that occurred in them.

cally, there were material issues of fact as to whether, for instance, the clause in the "separate agreement" calling for the transaction to be voided under certain circumstances applied to the land purchase agreement itself such that in reality the plaintiff would not have been in any way liable. This being so, the mere possibility that the land seller might bring an action was undercut by any reluctance he might have had to bring an action in light of his awareness that he might not succeed on the merits.

In *Denzer,* an action was brought against an attorney for negligently drafting a warranty deed. The deed was prepared and the real estate transaction was consummated in 1947. It is important to note that the malpractice did not, as in the case at bar, involve failure to include a financing contingency clause in the land purchase agreement; rather, it related to the particular description of the property given in the warranty deed drafted by the attorney. The plaintiffs commenced their action against the estate of the attorney sometime subsequent to a 1967 decision of this court. This court held that the injury occurred in 1947, on the date of consummation of the real estate transaction, "because it was on that date that they paid for and received the property described in the deed prepared by the attorney." *Boehm,* 65 Wis. 2d at 677, *citing Denzer.*

Thus, in *Denzer,* the plaintiff's injury did not depend upon the mere possibility that a legal action would be brought against him. The concomitant effect of the attorney's action was to cause actual damage to the plaintiffs immediately upon the transaction being consummated insofar as they did not receive that for which they had bargained and paid. The plaintiff's legal right to receive the property for which he had paid had been violated. Damage was an accomplished fact by virtue of the consummation of the real estate transaction. The plaintiff thus had a claim for relief when the real estate transaction occurred.

Unlike the situation in *Denzer,* of course, no real estate transaction was ever "consummated" in the case at bar, where the plaintiff never "paid for and received" the real estate as did the plaintiff in *Denzer.* Never having paid for the property, he never "lost" anything of value to himself. His "damage" in the instant case remained speculative, a "mere possibility." It depended

178

upon the entirely uncertain prospect of an act being taken by the land seller before the statute of limitations applicable to the land seller would be extinguished. Furthermore, in *Denzer* the plaintiff was damaged immediately upon the consummation of the transaction, whereas in the instant case the plaintiff received the property in question on better terms than he might have expected had the transaction with the original land seller been consummated. There simply is no comparable violation of a "right" of the sort that occurred in *Denzer.* One does not have any sort of legally cognizable "right" to a contingency clause in a land purchase agreement in the way one has a right to particular property for which he has bargained and paid.

As for the majority's reliance upon *Boehm,* the "right" at stake with regard to the first claim in *Boehm,* the claim for failure to file a patent application in a timely fashion, was clearly a legal right, specifically, a patent right. *Boehm,* 65 Wis. 2d at 678. "Patents do have the attributes of personal property and are assignable. 35 U.S. Code, sec. 261. The right to exclude others is a valuable right and the loss of it would be an injury which would commence the running of the statute of limitations." *Id.* This makes *Boehm* like *Denzer,* where the plaintiff lost the right to the particular property for which he had paid. There was no analogous "right" lost by the plaintiff in the instant case. There simply is not an intrinsic legal right or interest that one has in not being subject, for a limited period of time, to a possible lawsuit.

As to the majority's reliance upon the second claim in *Boehm*—for incorrect advice as to a third party's inspection of plaintiffs' invention—there appears to

have been no ascertainable "right" whatsoever.[3] In this regard, this court said: "Because the plaintiffs did not have a patent on the power unit and because the unit had been sold and was in public use it is questionable if they had any rights or interests in their invention." *Boehm*, 65 Wis. 2d at 678. The court went on to indicate that, insofar as the plaintiffs had no "right" in their invention, they suffered no injury related to their second claim. The court stated:

> We conclude that the injury to the plaintiffs' interests *would have occurred* when they sent models of the power unit to their competitors, if not before. It was then that they were injured by the defendants' allegedly erroneous advice, *if at all.*

*Id.* at 679 (emphasis added). Thus, we strongly suggested that there was no injury at all with regard to the second claim. Insofar as no injury ever occurred with regard to this second claim, no corresponding cause of action ever accrued. Thus, quite correctly, we effectively ruled that the plaintiff had no cause of action with regard to the second claim. I submit that, consistent with the situation as to the dubious second claim in *Boehm*, there was no "right"—and therefore no injury—at all in the case at bar until 1985.

Although the issue presented in this case is a bit unique, there are cases which, analogously, support my position.[4] For example, in *In re Easterbrook*, 200 Cal. App. 3d 1541, 244 Cal. Rptr. 652 (1988), the California Court of Appeals ruled that a complaint filed by a crimi-

---

[3]The majority inappropriately assumes there to have been "common law trade secret rights" that the plaintiffs "undisputedly" lost. *See* majority op. at 154.

[4]The majority cites cases listed by the plaintiff at majority op. at 158 n.11.

nal defendant against his attorney for malpractice failed to state a cause of action because it was filed before a verdict in the criminal action had been rendered. " 'The mere breach of a professional duty, causing only nominal damages, speculative harm, or the threat of future harm—not yet realized—does not suffice to create a cause of action for negligence.' " *Id.* at 1544, *quoting Budd v. Nixen,* 6 Cal. 3d 195, 98 Cal. Rptr. 849, 491 P.2d 433, 436 (1971). "[D]amages may not be based upon sheer speculation or surmise, and the mere possibility or even probability that damage will result from wrongful conduct does not render it actionable." *Id. See also, Zero Manufacturing Co. v. Husch,* 743 S.W.2d 439 (Mo. App. 1987) (if the occurrence of damage depends upon a contingent or uncertain event, then the fact of damage is speculative and a cause of action has not accrued); *Dowker v. Peacock,* 152 Mich. App. 669, 394 N.W.2d 65 (1986) (loans made with defective security create only the potential for a loss which will not cause damage unless the security is attacked by a third party or upon bankruptcy of the debtor).

In the final analysis, it is clear that the majority has not put forth any reason to justify its decision aside from expressing a dislike for the possibility that legal malpractice actions might take place more than six years after the negligence itself occurs. Because the plaintiff did not suffer any actual damages until 1985, the statute of limitations did not begin to run until that time. It follows that his cause of action is not time barred. Accordingly, I dissent to the majority opinion holding to the contrary. I would reverse the judgment of the trial court and hold as a matter of law that the plaintiff's action is not barred by the statute of limitations.