Laura S. HAMMER, Plaintiff-Appellant,

v.

Warren J. HAMMER, Defendant-Respondent.†

Court of Appeals

*No. 86–2039. Submitted on briefs August 4, 1987.—Decided November 19, 1987.*

(Also reported in 418 N.W.2d 23.)

† Petition to review denied.

257

For the plaintiff-appellant the cause was submitted on the briefs of *Kaftan, Kaftan, Van Egeren, Ostrow, Gilson, Geimer & Gammeltoft, S.C.,* with *G. Jane Kaftan* of counsel, of Green Bay.

For the defendant-respondent the cause was submitted on the briefs of *Schmaus Law Office,* with *William J. Chandek* of counsel, of Menomonee Falls.

Before Moser, P.J., Wedemeyer and Sullivan, JJ.

---

\* See Callaghan's Wisconsin Digest, same topic and section number.

WEDEMEYER, J. Laura S. Hammer appeals from the trial court's order of summary judgment which dismissed her complaint against her father, Warren J. Hammer. The dispositive issue of this case is whether the discovery rule of *Hansen v. A.H. Robins Co.*, 113 Wis. 2d 550, 335 N.W.2d 578 (1983) applies to cases of incestuous abuse.[1] Because we conclude that the discovery rule applies to the facts of this case, and because there still exist genuine issues of material fact to be resolved, we reverse the trial court's determination that the claims were barred by sec. 893.16, Stats., and remand for trial.

Laura, in an amended complaint, filed three claims against her father for incestuous abuse, intentional infliction of emotional distress, and negligent infliction of emotional distress. Warren moved to dismiss Laura's claims pursuant to sec. 802.06(2), Stats., on the ground that the claims were barred by the statutes of limitations, contained in secs. 893.57 and 893.54(1).[2]

Along with her brief in opposition to the motion to dismiss, Laura filed an affidavit of her psychological counselor, Michael Filipiak, to support the allegations of her complaint. This affidavit was accepted and considered by the court. The parties stipulated in open

---

[1] This issue has not been previously addressed in Wisconsin.

[2] Section 893.57, Stats., provides "[a]n action to recover damages for libel, slander, assault, battery, invasion of privacy, false imprisonment or other intentional tort to the person shall be commenced within two (2) years after the cause of action accrues or be barred."

Section 893.54, Stats., provides "[t]he following action shall be commenced within three (3) years or be barred: (1) an action to recover damages for injuries to the person."

court on the day the motion to dismiss was argued, that the amended complaint would be accepted, and that the trial court's decision on the motion to dismiss would apply to the amended complaint.[3] The trial court decided that Laura's claims were barred by sec. 893.16, Stats.[4]

---

[3]If a motion to dismiss is filed under sec. 802.06, Stats., and matters outside the pleadings are presented and accepted by the court for its consideration, the motion is considered a motion for summary judgment. *See* sec. 802.06(3), Stats. We have before us in this case, in addition to the briefs, only the plaintiff's original and amended complaint, a supporting affidavit, and defendant's motion for dismissal.

[4]Section 893.16(1), Stats. provides "If a person entitled to bring an action is, at the time the cause of action accrues, either under the age of 18 years, except for actions against health care providers; or insane, or imprisoned on a criminal charge the action may be commenced within 2 years after the disability ceases . . . ." Since Laura was born on April 16, 1964, the trial court concluded that she had until April 16, 1984, to file her claims. Laura's original complaint was filed on February 28, 1986.

The implications of the various statutes of limitation *vis a vis* the discovery rule are as follows: The statute of limitations for an intentional tort such as assault, battery or intentional infliction of emotional distress is two years, sec. 893.57, Stats. When claims of injury arise from negligence, the period of limitations is three years, sec. 893.54, Stats. When individuals under the age of eighteen years when the claim accrues are involved, the action may be commenced within two years after the age disability ceases, sec. 893.16(1), Stats. Under the trial court's ruling, Laura had until April 16, 1984 to file her claim. Laura, however, submits that under the discovery rule the claim didn't accrue until February, 1985. Thus, by filing her claims in February, 1986, she is well within both the two-year and the three-year statutes of limitations. Laura also claims that sec. 893.16 would not apply because it requires the claim to accrue before the age of eighteen

Laura alleges in her amended complaint that she was sexually abused by Warren on an average of three times a week, beginning in 1969 when she was five years old and ending in August, 1978 when she was fifteen. The conduct included, but was not limited to, indecent touching and oral intercourse, and was forced upon her without her consent.

The conduct occurred in secret and was accompanied by threats that harm would come to her if she ever told anyone about it. In an atmosphere of paternal dominion, Warren repeatedly told Laura that she had caused the acts he committed and that they were her fault. The acts and the circumstances in which they occurred caused Laura to develop various coping mechanisms and symptoms of psychological distress, including great shame, embarrassment, guilt, self-blame, denial, depression, and disassociation from her experiences.

At the age of fifteen, Laura reported Warren's acts to her mother. Warren, along with his mother, denied such conduct and trivialized it. He convinced Laura that she was not injured by the conduct but that she was at fault for her problems and for the family's problems. Warren also influenced her brother and sister to blame her, and to blame the family's problems on her having revealed his actions.

Laura further alleged that during the course of the abuse, because of the psychological distress caused by the abuse and the coping mechanisms which resulted, she was unable to perceive or know the existence or nature of her psychological and emotional injuries. These manifestations continued to operate on

years and she was twenty-one when she claims she discovered her injuries and their cause.

her long after the incidents of sexual molestation had ended, preventing her from perceiving her psychological and emotional injuries and their connection to her father's earlier acts, and causing her to resist and reject any suggestions that she obtain psychological counseling or legal advice.

She avers that in February, 1985, because of her emotional shock and distress at her father's attempt to obtain legal custody of her minor sister, she began to consider the relationship between his acts against her and her continuing psychological and emotional problems. Since that time, she has sought psychological counseling and legal advice and has begun to understand the past and present impact of his abuse.

The affidavit of Michael Filipiak, Laura's psychological counselor, declared that he was experienced in treating victims and perpetrators of intrafamilial sexual assault and that he was presently treating Laura for psychological and emotional injuries which he believed were caused by her father's sexual and other abuse. He believed that Laura was traumatized by the abuse and isolation and was unable to reveal and explore the damage she had suffered. He concluded that Laura had not perceived the incestuous conduct as injurious because (1) it was of such a long duration and frequency that it had been perceived by her as natural behavior; (2) Warren had imposed isolation and secrecy on her; (3) the abuse had depersonalizing effects which had made her think of herself as an object to be used rather than as a person with rights; (4) she had been told by her father that the conduct was normal and his right, and (5) the abuse by an authority figure on whom she was dependent had made her distrustful of other authority figures who might have helped her.

He further declared that, as a normal post-traumatic stress reaction, Laura had developed denial and suppression coping mechanisms. Because she had failed to understand or appreciate the abusive nature of her father's acts she had been unable to discover their psychological damage. The danger of her father subjecting her younger sister to the same type of abuse stimulated her awareness and delayed feelings about what had transpired years before.

Filipiak further opined that the minimization by Laura's family members of the abuse and its effects, and their blaming her for the breakup of the family had intensified the coping mechanisms of denial and suppression. He further stated that Laura's psychological manifestations were the usually recognized symptoms of post-traumatic stress disorder in victims of intrafamilial sexual abuse.

██

When reviewing the grant of a summary judgment motion, we are required to apply the standards set forth in sec. 802.08(2), just as the trial court applied those standards. *Green Spring Farms v. Kersten,* 136 Wis. 2d 304, 315, 401 N.W.2d 816, 820 (1987). Because we conclude that the trial court incorrectly decided a legal issue and there are material facts in dispute, we reverse. *See Germanotta v. National Indem. Co.,* 119 Wis. 2d 293, 297, 349 N.W.2d 733, 735 (Ct. App. 1984).

The trial court declared that it was aware that the Wisconsin Supreme Court had adopted a discovery rule for all tort actions but stated that it was

> unwilling to adopt a rule of delayed discovery that would operate to extend the statute of limitations for minors, sec. 893.16, for a period longer than that

mandated by the legislature. The legislature is free to carve out an exception for cases of incestuous abuse involving minors in Chapter 893 of the Wisconsin Statutes. Although the most atrocious behavior has been alleged on the part of the defendant, the Court concludes that the plaintiff is barred by sec. 893.16(1) and accordingly dismisses plaintiff's complaint.

We disagree with the trial court's decision not to apply the discovery rule to this case. We hold, as a matter of law, that a cause of action for incestuous abuse will not accrue until the victim discovers, or in the exercise of reasonable diligence should have discovered, the fact and cause of the injury. *See Borello v. U.S. Oil Co.,* 130 Wis. 2d 397, 411, 388 N.W.2d 140, 146 (1986).

The discovery rule,[5] as enunciated in *Hansen,* was formulated to avoid the harsh results produced by commencing the running of the statute of limitations before a claimant was aware of any basis for an action. In the interest of justice and fundamental fairness, our supreme court adopted a "discovery rule for all tort actions other than those already governed by a legislatively created discovery rule. Such tort claims shall accrue on the date the injury is discovered or with reasonable diligence should be discovered, which-

---

[5]This rule has also been referred to as a delayed discovery rule. "The typical delayed discovery rule provides that the cause of action accrues when the plaintiff discovers, or through the use of reasonable diligence should have discovered, both that s/he is injured and that the injury was caused by the defendant's misconduct." Note, *Statutes of Limitations in Civil Incest Suits: Preserving the Victim's Remedy,* 7 Harv. Women's L. J. 189, 213 (1984).

ever occurs first." *Hansen,* 113 Wis. 2d at 560, 335 N.W.2d at 583. In announcing this rule, our supreme court established its power to determine when claims accrue. In doing so, it declared that

> [w]ith the exception of sec 893.55, Stats., for medical malpractice claims, the Wisconsin statutes do not speak to this issue. In the past this court has fixed the time for accrual for tort claims, and we retain the authority to do so now. Past deference to the legislature does not preclude our adoption of the discovery rule. *Id.* at 559–60, 335 N.W.2d at 582.

Recently, *Borello* further explained the meaning of the discovery rule by declaring, "under Wisconsin law, a cause of action will not accrue until the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, not only the fact of injury but also that the injury was probably caused by the defendant's conduct or product." *Id.* at 411, 388 N.W.2d at 146. In applying the discovery rule of *Hansen* to the circumstances in which Borello found herself, the supreme court further explained that even though Borello had symptoms and a subjective belief as to the cause of her problems, her cause of action did not accrue until she "had information to a reasonable probability of the nature of her ailment and the factual information to a reasonable probability that the defendant's furnace was the cause of her injuries." *Id.* at 423–24, 388 N.W.2d at 151.

In applying the *Hansen* discovery rule to the factual context of *Borello,* the court was quick to point out that tort claims may still accrue at the time of the negligent act or the injury. But not all tort claims will accrue at that time; some will not accrue until

discovery occurs. "'Discovery' in most cases is implicit in the circumstances immediately surrounding the original misconduct." *Borello,* 130 Wis. 2d at 404–05, n. 2, 388 N.W.2d at 143, n. 2.

The facts on which the date of discovery was based in *Borello* are very similar to the facts as pleaded by Laura.[6] Like Borello, who subjectively believed that the furnace was the source of her problems, even if Laura may have harbored some subjective doubts about the normalcy of Warren's actions, because of Warren's dominion and authority and her own guilt, depression and disassociation, she had no information to a reasonable probability of the nature of her injuries or the facts with respect to their cause.[7] Like Borello, who was told by doctors that her injuries were not caused by the furnace, Laura was also misinformed and misled by the authority figures on whom she reasonably relied. Furthermore, Laura was intentionally misled as to the significance and cause of the abuse itself.

Warren claims that while Laura may not have fully understood the extent of the alleged harm during the time the incidents occurred, injury was suffered and discovered at or about the time the incidents

---

[6]As the standard adopted by the court is objective, *Borello,* 130 Wis. 2d at 404, 388 N.W.2d at 142, Laura's conduct is to be measured against that of a reasonable person in her circumstances.

[7] "[E]ven though a daughter may know that she has been injured, until such time as she is able to shift the blame for the incestuous abuse of her father, it will be impossible for her to realize that his behavior caused her psychological disorders. As with discovery of injury, discovery of cause can take years." Comment, *Tort Remedies for Incestuous Abuse,* 13 Golden Gate U. L. Rev. 609, 630 (1983).

occurred. He claims that the factual allegations of the complaint clearly reveal that the injury was discovered or should have been discovered at the time she was fifteen. He also argues that to allow application of the discovery rule would effectively eliminate any statute of limitations of any kind in similar types of cases. A defendant would be defenseless against fraudulent or stale claims.

██

Warren's arguments are unpersuasive. First, a cause of action does not necessarily accrue when the first manifestations of injury occur. The claimant has leeway to not start an action until she knows more about the injury and its probable cause. *Borello,* 130 Wis. 2d at 420, 388 N.W.2d at 149.

The policy justification for applying the statute of limitations to protect defendants from "'the threat of liability for deeds in the past'" is unpersuasive in incestuous abuse cases. *Incestuous Abuse* at 631. Victims of incest have been harmed because of a "most egregious violation of the parent/child relationship." *Id.* To protect the parent at the expense of the child works an "intolerable perversion of justice." *Id.* Further, "the injustice of barring meritorious claims before the claimant knows of the injury outweighs the threat of stale or fraudulent actions." *Hansen,* 113 Wis. 2d at 559, 335 N.W.2d at 582.

Since the discovery rule will not benefit claimants who negligently or purposely fail to file a timely claim, *see id.,* the statute of limitations will not be "effectively eliminated." Furthermore, statutes of limitations will still run; they will run from the date of discovery instead of from the date of injury. Warren is also protected by the requirement that Laura bears the burden of proving her claims. *See id.*

██

Because of the rationale of the discovery rule as stated in *Hansen,* and because the reasons for its application in *Borello* are equally valid here, we accept its precedential value for the purposes of deciding this case. We conclude that the discovery rule is applicable to the presumed factual setting of Laura's three claims.

██

In concluding that the discovery rule is applicable, however, we do not decide the factual question of when Laura discovered or should have discovered her injuries and their cause.[8] Since the trial court rejected the applicability of the discovery rule, this question was not answered. Thus, because genuine issues of material fact remain open, including when Laura's cause of action accrued, we reverse and remand this matter for trial.

*By the Court.*—Order reversed and cause remanded.

---

[8]We note that the court in *Borello* looked at undisputed facts to determine, as a matter of law, when the cause of action accrued. *Borello,* 130 Wis. 2d at 404, 388 N.W.2d at 143. We do not conclude in our case that the facts are undisputed; it is only assumed for the purposes of reviewing the summary judgment determination that Laura would be able to establish all of the allegations in the complaint as fact.