Elizabeth BYRNE, Plaintiff-Appellant,

v.

Frank BERCKER, Defendant-Respondent-Petitioner.

Supreme Court

*No. 91-1782. Submitted on briefs February 3, 1993.—Decided June 22, 1993.*

(Also reported in 501 N.W.2d 402.)

For the defendant-respondent-petitioner there were briefs by *John Theiler Bode* and *Bode, Gross, Carroll & Murn, S.C.*, Waukesha.

For the plaintiff-appellant there was a brief by *Michael J. Cohn* and *Zetley Law Offices, S.C.*, Milwaukee.

Amicus Curiae brief was filed by *Robert W. Pledl*, Milwaukee for Legal Aid Society of Milwaukee, Inc.

PER CURIAM. This is a review of an unpublished decision of the court of appeals dated May 28, 1992, which reversed an order for summary judgment granted by the circuit court for Milwaukee county, David V. Jennings, Jr., Judge. We reverse the decision of the court of appeals and direct dismissal of the complaint.

The question is whether the period of limitations had run on Elizabeth Byrne's civil action for damages against her father, Frank Bercker, for incestuous acts that "allegedly" occurred from 1940 to 1949. The controlling statute of limitations is sec. 893.587, Stats.[1]

---

[1] Section 893.587, Stats., provides:

**893.587 Incest; limitation.** An action to recover damages for injury caused by incest shall be commenced within 2 years after the plaintiff discovers the fact and the probable cause, or with the exercise of reasonable diligence should have discovered the fact and the probable cause, of the injury, whichever occurs first.

1038

The facts which raise the question of whether the claim is time barred are substantially undisputed.[2]

On November 16, 1989, Elizabeth Byrne filed a complaint against her father, Frank Bercker, alleging that her father had incestuously abused her from the time she was two years old until she was eleven—from 1940 to 1949. At the present time plaintiff is approximately fifty-four years old and her father is approximately eighty. The record indicates that the complaint was served upon him in a nursing home.

Plaintiff alleged that, as a result of this sexual abuse, she suffered severe emotional and psychological damage. She alleges that she was unaware, however, that she had any emotional or psychological damage until, during the course of therapy, she recalled episodes of sexual abuse that took place almost fifty years earlier. She had no memory of these episodes of abuse until they were recalled in 1986.

The record, affidavits, and depositions on file show that, prior to 1986, the relationship between plaintiff and her father was apparently normal, and there is no evidence of any emotional or psychological aberrations, familial tensions, or injury before 1986.

In February 1986 plaintiff was in a head-on automobile collision. She sustained a head injury and a broken hip. The hip injury required that she be placed in traction, immobile and, in her eyes, in a vulnerable physical position. During this time she believed that the health care workers and physicians treating her were sexually abusing her—a belief which she now acknowledges is incorrect.

---

[2] The statement of facts is largely that which appears in the plaintiff's brief in this court and is also gleaned from the allegations of the complaint.

As a result of this episode, plaintiff was referred to a psychologist for treatment. It was only after the commencement of psychological treatment that plaintiff stated that she had been sexually abused by her father. This statement of recall of past events arose out of a series of episodes referred to as "flashbacks" or visualizations of alleged episodes of incestuous abuse that occurred in the 1940's. She asserted that she remembers the first assault, which took place when she was two years old.

Expert psychological opinions appearing in the record and affidavits in the circuit court record state that many incest victims repress their memories and only recall such episodes after many years.

The plaintiff acknowledges that memory of her sexual attacks was recalled by her more than two years prior to the commencement of the action. The plaintiff's brief in this court states:

> We recognize that the memory of sexual abuse was at least partially recovered and was discussed in therapy more than two years prior to the date the instant lawsuit was filed. *See, e.g.* R. 13 Lazar deposition at p. 29, indicating that it was discussed in November, 1986. We also acknowledge that around this time the plaintiff had been told by Dr. Lazar that she was the victim of the abuse and that it caused her certain problems.

Plaintiff, despite this candid acknowledgment, then relies upon the deposition of Dr. Lazar, a psychologist, to support the assertion that, until the summer of 1989, plaintiff was "blamelessly ignorant" and that it was not until that time she was psychologically capable of bringing the lawsuit.

Following the commencement of the action and an answer by the defendant denying all allegations of sexual

abuse, defendant moved in March of 1991, for summary judgment, asserting that the action was barred by the statute of limitations.

The facts recited above are derived from the affidavits, counter-affidavits, and depositions filed in the circuit court summary judgment proceeding. These affidavits and supporting documents indisputably demonstrate that, by July of 1986, plaintiff recalled the alleged incestuous assaults. The record also demonstrates that, by December 1986, she acknowledged that the assaulter had been her father. During this period she was receiving treatment and had been told by her therapists that she was a victim, not a perpetrator, and that her emotional symptoms were caused by the incestuous conduct of her father.[3]

The defense to defendant's summary judgment motion in the circuit court was based primarily upon the expert opinion of Dr. Lazar. Although Dr. Lazar acknowledges that plaintiff as early as July 1986, was aware that she had been the subject of incestuous assaults by her father and that such assaults were the cause of her symptoms, it was not until the summer of 1989 that the plaintiff "could shift the blame to her father," rather than blame herself as most incest victims do. Until then, Dr. Lazar stated, she was psychologically

---

[3] The record indicates that, during this period of recall, in addition to plaintiff's earlier belief that she had been sexually assaulted while in traction, she also asserted that she was a Native American in origin, an assertion no one claims has any factual basis. She also claims to have been sexually assaulted by her mother by the repeated use of enemas, an assertion denied by Jane Bercker and, in respect to which, she recalls only one enema episode, in which the enema was administered by a registered nurse pursuant to directions of a named physician.

and emotionally incapable of accepting the reality of the sexual abuse and could not have taken legal action.

Thus, the plaintiff asserted that a complaint filed in November of 1991 was within two years of "discovery" in 1989 and was not barred by the statute.[4]

The plaintiff, in the summary judgment proceeding, based her legal argument on footnote 7 appearing in *Hammer v. Hammer,* 142 Wis. 2d 257, at 266, 418 N.W.2d 23 (Ct. App. 1987). That footnote, which plaintiff asserts is an integral part of the "holding" of *Hammer,* states:

> '[E]ven though a daughter may know that she has been injured, until such time as she is able to shift the blame for the incestuous abuse of her father, it will be impossible for her to realize that his behavior caused her psychological disorders.'

The defendant, in further support of his motion for summary judgment, asserted that the footnote relied upon by plaintiff as the holding of *Hammer* was mere *obiter dictum* and was not a part of the very specifically stated holding of the *Hammer* court at 264:

> We *hold,* as a matter of law, that a cause of action for incestuous abuse will not accrue until the victim discovers, or in the exercise of reasonable diligence should have discovered, the fact and cause of the injury. *See Borello v. U.S. Oil Co.,* 130 Wis. 2d 397, 411, 388 N.W.2d 140, 146 (1986). (Emphasis supplied.)

---

[4] It should be noted that neither party based its summary judgment arguments on whether there were disputed matters of material facts. Each of them treated the question as one of law, although, the court of appeals held, summary judgment was inappropriate because there were disputed facts that were material in light of its interpretation of the law.

Defendant asserted that, consistent with *Hammer's* precise holding, which extended the discovery doctrine to victims of incest, all the elements for the accrual of the civil cause of action were indisputably present or discovered in mid-1986, because plaintiff knew that her father had sexually abused her and that her emotional problems—her injuries—were caused by that abuse.

Defendant also points out that sec. 893.587, Stats., the statute of limitations, *supra,* inarguably was intended to codify the holding of *Hammer,* and did no more than incorporate that precise holding in the Limitation of Actions section of the statutes. The legislature did not include or refer to footnote 7 relied upon by plaintiff as an integral part of the *Hammer* holding.

Defendant asserted that to judicially formulate a rule that would leave to the subjective impulse of a plaintiff the determination of when that person was ready to commence an action would be contrary to the standard of the knew or should have known rationale of *Borello, Hammer,* and sec. 893.587, Stats., the codifying statute.

Arguments stated above were made by counsel at the circuit court hearing. The judge accepted the arguments of the defendant, and an order for summary judgment was issued by the court. The court found as facts:

> [T]hat by December of 1986 the plaintiff had recalled these alleged sexual assaults. That plaintiff was being treated by her experts for the problems that they felt she was experiencing and that she is claimed to have experienced as a result of these alleged sexual assaults. That plaintiff's experts have testified that she knew she needed professional care for her alleged sexual abuse problems and understood that this was very important. Further, that plaintiff's experts have testified that as of December of 1986, plaintiff had been told by them that this wasn't her

fault and it was her father's fault and the problems that she was complaining of were caused by the alleged sexual assault and/or incestuous relationship.

Based on these findings of fact, which are not clearly erroneous, the circuit court could have additionally stated that plaintiff, when she realized that her problems were caused by her father, had in effect "shifted the blame" to her father. By 1986, *i.e.,* the plaintiff had told her experts that it was her father's fault, not hers. This, however, is not the legal formulation of "cause" recognized in *Borello*.

In its conclusions of law, the circuit court relied wholly upon the *Borello-Hammer* holding for its rationale, stating:

> That as of December of 1986, plaintiff discovered the fact and the probable cause and/or with the exercise of reasonable diligence should have discovered the fact and the probable cause of the injuries and damages that she claims to have occurred as a result of the alleged sexual assault and/or incestuous relationship in question.

In accordance with the findings of fact and the conclusions of law, the circuit court held the claim to be barred by the two-year statute of limitations because action was commenced more than two years after the accrual of the plaintiff's cause of action.

The plaintiff appealed from the circuit court's order dismissing the complaint.

The court of appeals reversed and remanded for a trial because the record showed that there were disputed

material facts that would have to be resolved by a factfinder.[5]

Where facts, even if material, are disputed, those facts become irrelevant if, in giving full benefit to the party against whom summary judgment is sought, the claim nevertheless is barred as a matter of law.

The court of appeals reversed not only because there were disputed facts, but also because it concluded that the circuit court incorrectly applied the law. It reversed the circuit court and remanded. We accepted the review. We now reverse the court of appeals.

We find it difficult to determine from the opinion of the court of appeals in what respect the trial court incorrectly applied the law. As we view the trial court proceeding and opinion and the opinion of the court of appeals, it appears both courts applied precisely the same law. The court of appeals relied upon the same authorities and precedents urged by the defendant and accepted by the circuit court in finding that as a matter of law the rule of *Borello, Hammer,* and sec. 893.587, Stats., effective July 1, 1989, was applicable. We see no error of law committed by the circuit court.

The court of appeals, however, used the language that "it was not until the summer of 1989 that she had the ability to overcome her alleged guilt and determine that Bercker was the cause of her injuries." This appears to be an elision of the "shifting of blame" rationale. Moreover, this statement is factually incorrect, because the plaintiff knew by 1986 of the abuse by her father and that such abuse was the cause of her injuries.

---

[5] The court of appeals stated that the plaintiff's complaint and affidavits claimed episodes of incest, while defendant's answer and counter-affidavits denied any incestuous assaults.

We conclude, however, that "shifting the blame" language has not been made a part of the statutory test under either sec. 893.587, Stats., or by the prior case law of this court or the court of appeals. While such language, derived from the law review comment, appears in footnote 7 of *Hammer,* it in no way constitutes a part of the *Hammer* holding. Also, as argued by defendant, the legislature did not see fit to conclude that footnote 7 was a necessary element under Wisconsin law that must be satisfied before it can be said that an incest plaintiff's cause of action has accrued and the statute of limitations has commenced to run.

We conclude that the statute of limitations as it appears in sec. 893.587, Stats., contains all the elements that this court and the legislature in codification of the holdings of this court and of the court of appeals require for the commencement of time to commence an action. To repeat the statute of limitations (sec. 893.587):

> An action to recover damages for injury caused by incest shall be commenced within 2 years after the plaintiff discovers the fact and probable cause, or with the exercise of reasonable diligence, should have discovered the fact and the probable cause, of the injury, whichever occurs first.

In the instant case it is undisputed, indeed it is acknowledged in plaintiff's brief, that plaintiff was aware by mid-1986 that her difficulties stemmed from incestuous abuse by her father and that she had been told that she was the victim of that abuse and was not the perpetrator.

Thus, more than two years prior to her commencement of the action for damages, she knew the nature and

extent of her injuries and knew that her father was the cause of those injuries.

Therapists take the position that healing is not possible until the plaintiff undergoes an epiphany which in some mysterious way makes it possible for her to say that she is blameless and the perpetrator is solely to blame. This may well be true, but statutes that limit the time in which to sue or which, by estoppel or by delayed discovery, extend the time to sue are designed to assure fairness in our judicial system, *i.e.,* that no one will be barred from suit until one knows or should have known that there is a cause of action and, conversely, that defendants will be protected, after a period of limitations has run, from a plaintiff who does not timely assert rights when aware of all the necessary elements of the cause of action.

It is undisputed that, by mid-1986, the plaintiff knew of her injury, its nature, and who caused it. This satisfies the statutory test and the *Borello-Hammer* test. At that time the cause of action accrued and the two-year period of limitations commenced.

We do not discount the psychologist's perception that shifting the blame is therapeutically significant, but we think it inappropriate to tailor statutes of limitation to therapeutic goals in derogation of the specific test of the statute of limitations. To the extent that the court of appeals in the instant case believed that footnote 7 of *Hammer* constituted a part of the test of "discovered or should have discovered" and was a necessary element of a cause of action, we conclude that the court of appeals was in error and misinterpreted the *Hammer* opinion.

Although there are fundamental facts in dispute, *e.g.,* the allegation of incest and the denial of that incest in the defendant's answer, these facts are not material in the posture of this case, where plaintiff has forfeited her

right to contest these facts by failure to timely file an action after she knew the fact and nature of her injuries and had reason to know and, in fact knew, that her father's conduct was the cause of those injuries. Plaintiff's cause of action is barred by the running of the period of limitations.

*By the Court.*—We reverse the court of appeals and remand the cause to the circuit court with directions to dismiss the plaintiff's complaint.

HEFFERNAN, CHIEF JUSTICE *(dissenting).* I would affirm the court of appeals, because, as it stated in its decision, the case was not in a posture for disposition on summary judgment, for the affidavits filed showed that material facts were in dispute. For example, the defendant, Frank Bercker, denied that any episode of incest, as stated in plaintiff's complaint, had ever occurred.

I do, however, disagree with the court of appeals' recitation of the applicable law, because *Hammer v. Hammer,* 142 Wis. 2d 257, 418 N.W.2d 23 (Ct. App. 1987), did not "hold" that the statute of limitations did not commence to run until such time as the plaintiff, the alleged incest victim, was psychologically able to shift the blame from herself to her father or, as stated by the court of appeals, "until . . . she had the ability to overcome her alleged guilt." I conclude, even could a reading of *Hammer* result in that interpretation, the subsequently enacted statute of limitations effective in 1989 specifically applicable to the "discovery" of incest did not incorporate the plaintiff's gloss on *Hammer.* It merely made applicable the discovery rule of *Borello (Borello v. U.S. Oil Co.,* 130 Wis. 2d 397, 388 N.W.2d 140 (1986)) to cases of incest. I also conclude that the "shift-

1048

ing of blame" language relied upon by the plaintiff constituted no part of the holding in *Hammer* under the facts of that case. It is at the most dicta.

While the court of appeals in the present case appears, tacitly at least, to have acquiesced in the plaintiff's theory of "shifting the blame," its actual holding in reversing the summary judgment was based primarily on the evidence of disputed material facts that made summary judgment inappropriate.

Accordingly, I would remand the cause to the circuit court for the determination by the factfinder—both parties have requested a jury—to determine when "discovery" occurred and, hence, when the statute of limitations commenced to run.[1] I would direct the circuit court to instruct the jury that such finding of fact be in accordance with the legislative directions of sec. 893.587, Stats.,[2] and not in accordance with the plaintiff's interpretation of the *Hammer* dicta, which I conclude is insupportable as a matter of law.

I agree with the statement of facts set forth in the majority opinion.

A fair reading of the plaintiff's affidavits and filed depositions and the facts as set forth in the majority opinion reveals that, by mid-July 1986, plaintiff was aware of the alleged sexual abuse by her father over forty years previously and that by December of 1986 she knew

---

[1] And, of course, for the trial to determine the merits if that becomes appropriate.

[2] Section 893.587, Stats., provides:

**893.587 Incest; limitation.** An action to recover damages for injury caused by incest shall be commenced within 2 years after the plaintiff discovers the fact and the probable cause, or with the exercise of reasonable diligence should have discovered the fact and the probable cause, of the injury, whichever occurs first.

(1987) a. 332, effective July 1, 1989.

1049

that she had been told by her therapists that this history of incestuous assault was the cause of her current emotional distress.

Depositions taken of the plaintiff indicate that, from the time of the alleged assaults to the time of the "flashbacks" following the auto accident, she had no history of emotional trauma and, even when her recollection was refreshed, she had no recollection of any physical injury or pain connected with the alleged incestuous assaults. The "flashbacks" also included visualizations or memory recalls that her mother had sexually assaulted her by the repeated use of enemas. She stated, however, that she always had recollections of the conduct of her mother but never considered them to be sexual assaults until her therapy treatments in 1986 or 1987 following the accident. When asked whether she contemplated suing her mother, she responded saying, "I don't really know."

The affidavit and deposition of her father filed with the court deny any sexual contact with the plaintiff and assert that the plaintiff's personality changed following her head injuries and that, at no time prior to the events of 1986, did the plaintiff ever exhibit any physical or mental problems consistent with any sexual abuse. The mother, Jane Bercker, denied any knowledge of any of the acts alleged and denied that any enemas were ever administered except on the orders of a physician. On the one occasion she could recall, the enema had been administered by a registered nurse.

It is apparent from the record on summary judgment that factual matters that are of material importance, in light of the allegations of the complaint, are in dispute. Hence, the cause should be remanded to the circuit court for the resolution of these facts by the jury.

The court of appeals correctly so held in reversing the circuit court.

In addition to deciding the disputed facts of the asserted incest and its denial, an additional and significant initial factfinding is required of the jury, *i.e.*, the determination of when discovery occurred and, hence, when the statute of limitations began to run.

This factfinding implicates a question of law, incorrectly asserted by the plaintiff, which I conclude was not dealt with adequately by the court of appeals.[3]

I do not quarrel with the court of appeals decision in *Hammer v. Hammer,* 142 Wis. 2d 257, 418 N.W.2d 23 (Ct. App. 1987), in respect to which this court denied review.

As I view *Hammer,* it simply adopted, for incest cases, the discovery rule previously stated by this court in *Borello.* The court of appeals in *Hammer* stated, at 264:

> We hold, as a matter of law, that a cause of action for incestuous abuse will not accrue until the victim discovers, or in the exercise of reasonable diligence should have discovered, the fact and cause of the injury. *See Borello v. U.S. Oil Co.,* 130 Wis. 2d 397, 411, 388 N.W.2d 140, 146 (1986).

The general discovery rule was first approved in *Hansen v. A.H. Robins Co.,* 113 Wis. 2d 550, 335 N.W.2d 578 (1983). *Hansen* held that the cause of action accrued on the date the injury was discovered, not on the date of the act that resulted in injury. *Borello* went a step fur-

---

[3] As stated above, the reliance on the plaintiff's "shifting of the blame" theory was not explicitly relied upon for the court of appeals decision, but the imprecise dicta apparently has fortified the plaintiff's assertion that its interpretation of *Hammer v. Hammer* is correct.

ther and held that, although an injury was known at an earlier date, the cause of action did not accrue or limitations commence to run until, in the exercise of reasonable diligence, the injured party discovered the cause of the injury. In *Borello* the injury was a respiratory ailment that was apparent to the injured party but it was not until two years afterward that she acquired factual information to a reasonable probability that a defective furnace was the cause of the injury. This court held that on the date she acquired that information her cause of action accrued.[4]

It is clear that in *Hammer* the court of appeals simply and correctly applied the *Hansen-Borello* discovery rule to incest cases, *i.e.,* that the period of limitations commences when the act of incest is discovered to be the probable cause of the injury.

I agree with the court of appeals that the summary judgment record reveals disputed material facts. The court of appeals decision recites that the affidavits of the psychologist and counselor both state that the plaintiff discovered the cause of her injuries in 1989, while the defendant's arguments based on affidavits contend that the discovery date for the cause of the injury was at least as early as December 1986.

The holding of *Hammer* is precise and applies *Hansen* and *Borello* to incest claims. The plaintiff asserts, however, that *Hammer,* a published opinion never reviewed by this court and, hence, precedential, adopted a special rule of law applicable to incest cases, a rule stated by the plaintiff as requiring that the cause of action does not accrue until the plaintiff is capable psy-

---

[4] Section 893.04, Stats., provides in part:

> . . . a period of limitation within which an action may be commenced is computed from the time that the cause of action accrues until the action is commenced.

chologically of commencing a lawsuit. Thus, plaintiff argues that, although she knew the identity of the abuser, has been told by reliable therapists and diagnosticians that the cause of her problems was the incestuous abuse suffered, and she is aware of the statements of her therapists, the cause of action does not accrue until she could "shift the blame" to her father for what occurred.[5] The defendant points out, correctly I conclude, that the *Hammer* opinion of the court of appeals does not so hold. Defendant also asserts that to adopt the rationale of the plaintiff would simply mean that the statute of limitations would not in any case commence until the plaintiff "felt up to it."

I do not comment upon the defendant's argument in the latter respect, for *Hammer* furnishes no support that "shifting the blame" is an integral part of the holding of that case. Plaintiff places her reliance solely upon footnote 7, page 266, of *Hammer,* which on its face does not purport to supplement or explain the court's holding set out with precision on page 264, as quoted above. Footnote 7 states:

> '[E]ven though a daughter may know that she has been injured, until such time as she is able to shift the blame for the incestuous abuse of her father, it will be impossible for her to realize that his behavior caused her psychological disorders. As with discovery of injury, discovery of cause can take years.' Comment, *Tort Remedies for Incestuous Abuse,* 13 Golden Gate U.L. Rev. 609, 630 (1983).

---

[5] As mentioned above, the court of appeals in the instant case referred to this asserted rule of law, but only in recounting the contents of plaintiff's affidavits and no more incorporated it as a legal holding in this case than it did in *Hammer.*

A full reading of the excellent student comment from which footnote 7 is an excerpt reveals that it was the author's thesis that, because of the psychological complexities resulting from incestuous abuse, the traditional date of injury—date of accrual tort formula—should be abandoned in favor of a discovery rule, which appears on page 629 of the comment: "The basic postulate of the exception is that the statute of limitations can be tolled until such time as the plaintiff knows, or through the exercise of reasonable diligence should know, of her injury and its cause." This is the rule adopted by this court in *Hansen-Borello* and the rule that constituted the holding in *Hammer*. The quoted comment did not purport to urge the adoption of a different rule. The rule urged in the comment is precisely that which this court has adopted. The Golden Gate Law Review comment, which the court of appeals footnoted, constitutes at most an evidentiary observation. The plaintiff's interpretation of *Hammer* is incorrect.

Moreover, sec. 893.587, Stats., *Incest: limitation,* effective July 1, 1989, was passed subsequent to the mandate of *Hammer* and acknowledgedly pursuant to it. Yet, the legislature stated the discovery rule applicable to incest to be the exact "holding" of *Hammer* and *Hansen-Borello.* I conclude, therefore, that the legislative interpretation of *Hansen* does not require as a matter of law that discovery of the fact and cause of injury resulting from incest includes the element of being able to "shift the blame" at a time subsequent to knowing the fact of the injury and its cause.[6]

---

[6] "Shifting the blame" may be a shorthand term intended to convey the meaning that the victim has concluded, or should in the exercise of reasonable diligence have concluded, that the family member caused the injury. That concept is not a separate test to be applied at a time subsequent to the discovery of the injury

While the psychological process may have some part in ascertainment of cause, it is not a separate test to determine that a plaintiff, after ascertaining the nature of the injury and its cause, must separately be found to have shifted the blame from herself to the abuser. That shift of blame—if one there be—is subsumed in the concept of cause. To conclude that it is a separate element to be applied subsequently or sequentially would leave the discovery date to be whenever the victim decided to commence the lawsuit. While the objective test must be applied considering the actual circumstances of a reasonable person in the plaintiff's position, to tack "blame shifting" onto the discovery test codified in sec. 893.587, Stats., would comport neither with the *Hansen-Borello* rationale nor the statute.

Initially, one is disturbed by the possible consequences of what the plaintiff urges—the bringing of a newly discovered cause of action for events that occurred almost fifty years ago. Insofar as the record reveals, the plaintiff had no social or emotional problems even arguably related to any form of sexual abuse, had no feelings of unworthiness until she sustained her auto accident injuries, and over the years had good relations with her parents, although she did in her deposition state that she wanted her father to pay more attention to her after the birth of a brother.

and the discovery that the injury was caused by the alleged assault.

It should be noted, however, that Counselor Judy Loudin in her deposition stated that it was her opinion that the plaintiff was unable to determine the cause of her injury until she saw herself as a victim and not as a perpetrator of the sexual misconduct. Obviously, this is precisely the kind of a factual issue to be resolved by a factfinder and is dependent upon the factfinder's appraisal of the witness' expertise and her credibility.

She was apparently asymptomatic until after the time of her accident when "flashbacks" included a belief—which she now acknowledges as false—that the doctors were sexually molesting her and that she was of Native American ancestry, although it is asserted that this is probably incorrect.

Nevertheless, the public policy of the state in respect to the time within which one is required to bring civil cases for incest has been defined by this court and has been statutorily restated by the legislature. What remains is the application of that law to the facts to be found by the factfinder. The mere passage of time before discovery, no matter how great, does not *ipso facto* dictate a dismissal of the cause, although the lapse of a great period of time might affect a factfinder's view of the credibility of the facts alleged.[7]

---

[7] A technique frequently resorted to by therapists is based upon what is known as the repression theory. Under that theory, the act of repression blocks painful or dangerous memories of past events from gaining consciousness. An integral part of the repression theory is that, in the course of therapy, persons may regain the memories of childhood trauma.

It should be emphasized that this is a theory only. Professor Elizabeth Loftus, Professor of Psychology at the University of Washington, has conducted experiments which cast doubt on the repression theory, and she emphasizes that the repression theory has never been demonstrated by scientific experimentation.

Paul McHugh, Director of the Department of Psychiatry and Behaviorial Sciences at John Hopkins University, contends that "most severe traumas are not blocked out by children but are remembered all too well." He points out that the childhood memories of the Holocaust and concentration camps are well remembered. *See* Lawrence Wright, *The New Yorker* magazine, May 24, 1993, pp. 69, 70.

It is clear that the use of psychological evidence in a case of this nature requires the factfinder to assess the credibility of the

This court has frequently stated that, upon determining that material facts are in dispute, a summary judgment must be reversed and the cause remanded to the circuit court for the resolution of those facts. This court has stated that the determination of the date of discovery of the facts essential to a cause of action resulting in the commencement of the running of limitations is a jury question.[8]

Both parties have requested a jury trial. The jury or other factfinder will be required to perform the usual function of deciding the factual issues on the basis of the credibility of all witnesses and the qualifications of experts, all subject to the instructions of the court.

While the circuit court's opinion and findings are quite cursory, it appears that it dismissed the complaint because the plaintiff was "aware" of her problems in 1986. As the court of appeals held, this is not a complete formulation of the test of discovery, which must include the discovery of the injury and the discovery of the cause of the injury. Thus, the judgment of the circuit court was in part based on an error of law. Moreover, material facts

---

evidence and the witness in respect to the theory espoused and also in respect to the scientific credentials of the witness. Jury instructions should be tailored by the trial court to assure that credibility of these witnesses be given appropriate scrutiny.

[8] *See Spitler v. Dean,* 148 Wis. 2d 630, 638, 436 N.W.2d 308 (1989) (question being one of diligence); *Hammer v. Hammer,* 142 Wis. 2d 257, 268, 418 N.W.2d 23 (Ct. App. 1987) (question when plaintiff should have discovered her injuries); *Hennekens v. Hoerl,* 160 Wis. 2d 144, 465 N.W.2d 812 (1991) (question of diligence ordinarily a question of fact to be resolved by the factfinder unless facts are undisputed and fact question can be resolved as a matter of law); *see,* also, dissent in *Hennekens,* 160 Wis. 2d at 168, wherein cases are collected demonstrating that, when facts are disputed on matters of discovery, remand should be made to the circuit court for appropriate factfinding.

were in dispute and the case was not one appropriate for decision on summary judgment. I conclude that the discovery rule that applies to cases of incest is the rule stated in *Hansen-Borello* and codified in sec. 893.587, Stats. It does not include any other elements. What evidentiary factors are relevant in a particular case to determine the time of discovery of injury or the cause of the injury are matters of factual proof to be determined on a case-by-case basis. I would therefore affirm the court of appeals' mandate to reverse and would remand for factfinding and further proceedings.

I am authorized to state that Justice WILLIAM A. BABLITCH joins in this dissent.

SHIRLEY S. ABRAHAMSON, J. *(concurring and dissenting).* I must acknowledge that the plaintiff's claims in the present case give me pause. The plaintiff has brought an action for damages against her 80-year-old father (with whom she has had good relations over the years) for incest that allegedly occurred about fifty years ago. One wonders about the purpose or wisdom of litigating these allegations of injuries inflicted so long ago.

Nevertheless, under sec. 893.587, Stats. 1991–92, the passage of time alone does not justify the dismissal of a complaint.[1] By enacting this statute, the legislature declared the policy of providing a legal remedy to adult survivors of incest.

---

[1] Section 893.587, Stats. 1991–92, establishes that a plaintiff may commence an action to recover damages for injury caused by incest within two years after the time the plaintiff "discovers the fact [of the injury] and the probable cause [of the injury], or with the exercise of reasonable diligence should have discovered the fact and the probable cause, of the injury, whichever occurs first."

I write separately to emphasize that summary judgment is not appropriate in this case because a factfinder must determine the date the plaintiff discovered the fact and cause of injury and in doing so will have to evaluate testimony about an adult's mental processes in discovering the cause of his or her injury in a claim for incest. On summary judgment courts should not weigh evidence or determine the truth of asserted matters; courts simply determine whether there is a genuine issue of fact for trial. I would therefore affirm the decision of the court of appeals reversing the summary judgment.

From the affidavits and depositions in this record on summary judgment it is apparent, as the court of appeals explained, that the parties dispute the material facts of when the plaintiff discovered (or should have discovered) the fact of the injury and that the probable cause of her injury was incest.[2]

The majority opinion states repeatedly, *ipse dixit*, that the plaintiff knew by 1986 that she had been abused by her father and that this abuse was the cause of her injury. Repetition, however, does not establish the fact. The date at which the plaintiff made (or should have made) the discovery is the central factual dispute in this case and should be determined by the factfinder.

The test under the discovery rule, "in the exercise of reasonable diligence," is an objective test. Thus, under the discovery rule, the plaintiff's cause of action accrued when she discovered or when a reasonable person under

---

[2] In determining whether the cause of action is time-barred, only those facts relating to when the plaintiff discovered the fact and the cause of her injury are relevant.

If the plaintiff can overcome the statute of limitations hurdle, the record is clear that the parties dispute whether the sexual abuse ever took place. Therefore summary judgment is not appropriate on the merits of the case.

the same or similar circumstances as the plaintiff should have discovered the injury, its cause, its nature and the defendant's identity. *Spitler v. Dean,* 148 Wis. 2d 630, 638, 436 N.W.2d 308 (1989); *Hennekens v. Hoerl,* 160 Wis. 2d 144, 160, 465 N.W.2d 812 (1991).[3]

The discovery rule requires a particularized inquiry into whether a reasonable person in the victim's circumstances would have discovered the fact and cause of her injury earlier than two years before the action was commenced. In a case such as this one, expert psychological testimony would be presented. The factfinder's determination of when the plaintiff made or should have made the discovery is dependent upon the factfinder's appraisal of the psychological evidence presented, the scientific credentials of the expert witnesses, and the victim's credibility. The lapse of 50 years in this case might very well affect a factfinder's view of the facts alleged and the witnesses' credibility. Jury instructions should be tailored to assure that the credibility of the witnesses and the validity of the psychological evidence are given appropriate scrutiny.

I would therefore remand the cause to the circuit court for the factfinder—in this case a jury—to determine when "discovery" occurred, and hence, when the statute of limitations began to run.

---

[3] "The issue of reasonable diligence is ordinarily one of fact." *Spitler v. Dean,* 148 Wis. 2d 630, 638, 436 N.W.2d 308 (1989) (citing *Borello,* 130 Wis. 2d at 404). When the facts and reasonable inferences that can be drawn from the facts are not in dispute, whether a claimant has exercised reasonable diligence is a question of law. *See Hennekens v. Hoerl,* 160 Wis. 2d 144, 161, 465 N.W.2d 812 (1991); *see also Hennekens,* 160 Wis. 2d at 171-74 (Abrahamson, J. dissenting) (discussion of summary judgment and discovery rule).

In this case the facts and inferences are disputed.

I would also direct the circuit court to instruct the jury that such finding of fact be made in accordance with the legislative directive of sec. 893.587, Stats. 1991–92, which adopted the discovery rule set forth in our cases. I agree with the majority's conclusion that *Hammer v. Hammer,* 142 Wis. 2d 257, 418 N.W.2d 23 (Ct. App. 1987), merely applies to incest cases the discovery rule established in *Hansen v. A.H. Robins Co.,* 113 Wis. 2d 550, 335 N.W.2d 578 (1983),[4] and *Borello v. U.S. Oil Co.,* 130 Wis. 2d 397, 411, 388 N.W.2d 140, 146 (1986).[5]

The plaintiff urges this court to read *Hammer* as stating that a cause of action does not accrue until the plaintiff has "shifted the blame" for her injury, independent of her discovery of its fact and its cause. I agree with the majority's conclusion that the plaintiff's position is erroneous. Section 893.587, Stats. 1991–92, does not incorporate as a separate element the victim's psychological capability to commence a lawsuit at a time subsequent to discovering the fact and the probable cause of the injury. Nevertheless I conclude that the process of "shifting the blame," while not a separate step in the accrual of an action, may be an aspect of the

[4] *Hansen* held that the cause of action accrued on the date the injury was discovered, not on the date of the act that resulted in injury.

[5] *Borello* went a step further than *Hansen* and held that, although an injury was known at an earlier date, the cause of action did not accrue or the statute of limitations did not commence to run until, in the exercise of reasonable diligence, the injured party discovered the cause of the injury. In *Borello* the injury was a respiratory ailment that was apparent to the injured party. Not until two years after the injury became apparent to the injured party did she acquire factual information to a reasonable probability that a defective furnace was the cause of the injury. We held that her cause of action accrued on the date she acquired that information.

discovery of the cause of the injury. A victim must be aware (or a reasonable person in the victim's position should be aware) that some person other than herself is responsible for producing her injury before she can be said to have discovered the cause. It is only when she discovers the injury and its cause that the cause of action accrues.

Because the elements necessary to the discovery process (the discovery of the injury and its cause) are fact dependent and must be resolved by the factfinder before a period of limitations can be calculated, I conclude the court of appeals correctly remanded resolution of the fact questions to the circuit court.