IN the MATTER OF the ESTATE OF ROBERT D.B.,
Deceased:

CHERYL D., Claimant-Appellant,

v.

ESTATE OF ROBERT D.B., Respondent-Respondent.

Court of Appeals

*No. 95–3510. Submitted on briefs November 10,
1996.—Decided December 18, 1996.*

(Also reported in 559 N.W.2d 272.)

On behalf of the claimant-appellant, the cause was submitted on the briefs of *John A. Rothstein* of *Quarles & Brady* of Milwaukee.

On behalf of the respondent-respondent, the cause was submitted on the brief of *Michael J. Cohn* of *Zetley & Cohn, S.C.* of Milwaukee.

Before Anderson, P.J., Brown and Snyder, JJ.

ANDERSON, P.J. Cheryl D., f/k/a Cheryl B., appeals from an order for summary judgment dismissing as untimely her claim against the estate of her biological father, Robert B., for injuries arising out of an incident of incest that was alleged to have occurred sometime between 1975 and 1976. The dispositive issue is whether the discovery rule and

public policy reasoning enunciated in *Pritzlaff v. Archdiocese of Milwaukee*, 194 Wis. 2d 302, 533 N.W.2d 780 (1995), *cert. denied*, 116 S. Ct. 920 (1996), apply to an adult incest case.[1] We conclude that *Pritzlaff* does apply to this case. Therefore, we hold that the statute of limitations is not tolled by the discovery rule because Cheryl had sufficient evidence, since the alleged incident occurred that a wrong had been committed by Robert. We also conclude that public policy, as outlined in *Pritzlaff*, further precludes the discovery rule from saving a claim under the facts of this case. Accordingly, we affirm the trial court's order.

Robert died of cancer in December 1994. Robert's will bequeathed his estate to his third wife and his four daughters from his second marriage. A codicil to the will excluded Cheryl as a beneficiary to the will.[2] Cheryl filed an objection to the admission of Robert's will to probate.[3] The estate moved for summary judgment. Based on Cheryl's adoption by Henry B., the trial court, in an order dated June 26, 1995, dismissed Cheryl's objection for lack of standing to contest the will or codicils.

---

[1] This is the first application of *Pritzlaff v. Archdiocese of Milwaukee*, 194 Wis. 2d 302, 533 N.W.2d 780 (1995), *cert. denied*, 116 S. Ct. 920 (1996), to an adult incest case.

[2] Robert was married to Frances D., Cheryl's mother, for approximately nineteen months. Cheryl was born on October 20, 1949. Within six months, Frances moved back to Iowa with Cheryl. The uncontested divorce judgment, dated September 16, 1950, awarded care and custody of Cheryl to her mother. In 1954, Frances married Henry B. In December 1955, Henry legally adopted Cheryl and her name was accordingly changed. During the course of Cheryl's adolescent and adult life, she had "incidental contacts" with Robert.

[3] Cheryl decided to file the objection after she realized she "was mentioned in a codicil to expressly disinherit [her]."

Cheryl also filed two claims against the estate. The claim at issue on appeal was "for damages for injury caused by incest with her natural father, [Robert], Deceased, while visiting him in Wisconsin during the past 20 years."[4] Again, the estate filed a motion for summary judgment which the trial court granted.[5] The trial court found that the statute of limitations had clearly elapsed and that there was no evidence to suggest that Cheryl suppressed the event, "but only that she simply did not disclose it to her therapist as he maybe described until sometime in 1993." Accordingly, the trial court held that to allow this action to go forward, seventeen years after the alleged event, "is clearly violative of public policy." The court further reasoned "this cause of action . . . in no way rises to the level that would allow it to in essence balance the claimant's interest to a reasonable level against that of the threat of fraud involved in this matter." Cheryl appeals.

Cheryl argues that an issue of fact remains regarding whether her claim was timely; therefore, the trial court erred by granting the estate's motion for summary judgment. We review a motion for summary judgment using the same methodology as the trial court. *M & I First Nat'l Bank v. Episcopal Homes*

---

[4] Cheryl filed the objection to the will on her own. The claims were filed after she retained counsel, and were filed approximately two months before the trial court dismissed the will objection.

[5] Cheryl also filed a claim for past-due child support. The trial court granted the summary judgment motion as to this claim because the statute of limitations expired for any child support claims and it is a matter of Iowa court jurisdiction. Cheryl did not appeal this portion of the decision and the child-support claim is not before this court on appeal.

*Management, Inc.*, 195 Wis. 2d 485, 496, 536 N.W.2d 175, 182 (Ct. App. 1995); § 802.08(2), STATS. That methodology is well known, and we will not repeat it here except to observe that summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See M & I First Nat'l Bank*, 195 Wis. 2d at 496-97, 536 N.W.2d at 182.

A threshold question when reviewing a complaint on summary judgment is whether it has been timely filed because an otherwise sufficient claim will be dismissed if that claim is time barred. *Pritzlaff*, 194 Wis. 2d at 312, 533 N.W.2d at 784. The relevant statute of limitations in allegations of incest is two years. *See* § 893.21, STATS., 1977-78, (the statute pertaining to battery) and the current incest statute, § 893.587, STATS. Section 893.587 requires an action to recover damages for injury caused by incest to be commenced within two years after the plaintiff discovers, or with the exercise of reasonable diligence should have discovered, the fact or the probable cause of the injury, whichever occurs first.

It is well established that under some circumstances, public policy dictates under the "discovery rule," that the date that a cause of action accrues may be long after the date of the act that caused harm. *Pritzlaff*, 194 Wis. 2d at 312, 533 N.W.2d. at 784. As the supreme court explained, the discovery rule tolls the statute of limitations until the plaintiff discovers, or with reasonable diligence should have discovered, that he or she has suffered actual damage due to wrongs committed by a particular, identified person. *Id.* at 315, 533 N.W.2d at 785. "Until that time, plaintiffs are not capable of enforcing their claims

either because they do not know that they have been wronged, or because they do not know the identity of the person who has wronged them." *Id.* at 315-16, 533 N.W.2d at 785 (citations omitted). The standard is objective, so the victim's conduct is to be measured against that of a reasonable person in similar circumstances. *Hammer v. Hammer*, 142 Wis. 2d 257, 266 n.6, 418 N.W.2d 23, 26 (Ct. App. 1987).

Keeping these guidelines in mind, we conclude that the discovery rule does not preserve Cheryl's claim for damages. Essentially, Cheryl seeks damages for alleged injuries resulting from one episode of incest that occurred sometime between 1975 and 1976 when she was between the ages of twenty-four and twenty-six. Even though Cheryl knew about the episode ever since it occurred, she maintains that the trauma of the abuse prevented her from discovering the cause of her psychological injuries until sometime in 1993. Further, she maintains that she did not, nor could she, willingly consent to this alleged sexual act. We must accept the truthfulness of these allegations. *See Williamson v. Steco Sales, Inc.*, 191 Wis. 2d 608, 624, 530 N.W.2d 412, 419 (Ct. App. 1995).

Assuming these facts to be true, this case is analogous to the situation in *Pritzlaff*. There, the plaintiff sought damages arising out of a six-year relationship with the reverend father of her church that was alleged to have occurred twenty-seven years earlier. *Pritzlaff*, 194 Wis. 2d at 308-09, 533 N.W.2d at 782. The plaintiff argued that her claim was saved by the discovery rule because " 'she ha[d] suppressed and been unable to perceive the existence, nature or cause of her psychological and emotional injuries until approximately April 1992.' " *Id.* at 315, 533 N.W.2d at

785. The supreme court disagreed. The court concluded that "Ms. Pritzlaff's claim does not qualify for the tolling of the statute of limitations provided by the discovery rule because Ms. Pritzlaff knew of all of the elements of her underlying claim against Fr. Donovan, at the latest, by the time the relationship between the two ended." *Id.*

Following the same reasoning as the *Pritzlaff* court, Cheryl's claim does not qualify for the tolling of the statute of limitations. According to Cheryl's expert, Donald Beale, she was aware of the identity of the alleged tortfeasor and the inappropriate conduct of that tortfeasor during her lifetime. Also, in her deposition testimony, Cheryl stated that "I can't say that a person in my condition willingly went [to the bedroom]—no, because I had no ability at that time to make accurate judgments." Beale agreed that Robert "was able to coerce her to have sex with him." "[I]f in fact the sexual acts were a product of 'force and coerc[ion]', then the contact was immediately actionable as either a civil battery or an offensive bodily contact." *Id.* at 317, 533 N.W.2d at 786 (quoted source omitted). Therefore, assuming her allegations are true, Cheryl could have alleged a complete cause of action against Robert after the sexual contact because forced sexual contact in and of itself causes actual damage. *See id.* at 317 n.5, 533 N.W.2d at 786. That Cheryl was unaware of additional harm ("pain and suffering, psychological trauma, punitive damages") only created uncertainty as to the amount of damages, but did not toll the statute of limitations. *See id.* at 317, 533 N.W.2d at 786.

Nevertheless, Cheryl cites to *Hammer* and *Byrne v. Bercker*, 176 Wis. 2d 1037, 501 N.W.2d 402 (1993), in

support of her claim.[6] She contends that these cases stand for the proposition that "an assessment of *when* an incest victim discovered the cause of his or her psychological injuries must take into account the severe nature of the trauma commonly caused by sexual abuse." (Emphasis added.) She therefore maintains that "[t]he public policy considerations all favor allowing an incest victim to go forward where there is a question of fact as to when she was able to connect the incest to her injuries."

We do not interpret these cases or public policy considerations as saving a claim under the facts before us. We are also not persuaded by Cheryl's attempt to liken her situation to that of a child or minor who suffered years of abuse at the hands of a parent or authority figure on whom the child was dependent. Allegations of incest between adults trivialize the truly genuine and unquestionably tragic cases of child or minor sexual abuse, like that of the victims in *Hammer* and *Byrne*.

In *Hammer*, the discovery rule applied when the nature of the injury and effect on the victim were not understood until the victim was almost twenty-one and the complaint was filed one year later. *See Hammer*, 142 Wis. 2d at 260-61 n.4, 418 N.W.2d at 24. The victim alleged that her father abused her on an average of three times a week, beginning when she was five and continuing until she was fifteen. The abuse was

___

[6] Cheryl D. also cites to *Hildebrand v. Hildebrand*, 736 F. Supp. 1512 (S.D. Ind. 1990), and *Johnson v. Johnson*, 701 F. Supp. 1363 (N.D. Ill. 1988), in support of her argument. Because these cases involve foreign jurisdictions and are persuasive authority only, they are not decisive on this appeal. We only note that both involved sexual abuse of a child/minor and not incest between two adults.

accompanied by threats of harm and the victim was told that she had caused the acts he committed. *Id.* at 261, 418 N.W.2d at 24. Her psychological counselor averred that because (1) the abuse was of such long duration and frequency that it seemed normal, (2) her father imposed isolation and secrecy on her, (3) she was told it was normal and right, (4) the abuse was by an authority figure on whom she was dependent, and (5) her family's minimization of the abuse and its effects, she was unable to perceive the incestuous conduct as injurious. *Id.* at 262-63, 418 N.W.2d at 25. Her counselor also stated that her coping mechanisms of denial and suppression were common in victims of intrafamilial sexual abuse. *Id.* at 263, 418 N.W.2d at 25.

In *Byrne*, 176 Wis. 2d at 1039-40, 501 N.W.2d at 403, the victim was in a head-on automobile collision, after which she began to have "flashbacks" or visualizations of alleged episodes of incestuous abuse. She alleged that her father had incestuously abused her from the time she was two until she was eleven, but that she had repressed all memory of the alleged abuse until after the accident. *Id.* at 1039, 501 N.W.2d at 402-03. Although *Byrne* recalled the events and the perpetrator by December 1986, she failed to bring the lawsuit until 1989 when she was "psychologically capable" of bringing the suit. *Id.* at 1040-41, 501 N.W.2d at 403. The supreme court dismissed the case because the victim knew the nature and extent of her injuries and knew that her father was the cause of those injuries more than two years prior to the commencement of her action for damages. *Id.* at 1046-47, 501 N.W.2d at 406.

These cases simply do not support Cheryl's claim for damages. The factual difference, as noted by the

trial court, is that Cheryl "was not someone of tender age or who otherwise might not have understood the significance of the allegation that gives rise to the event." Rather, she was "a young adult who was a college graduate, who was an individual as a commissioned officer in the service of this country . . . who *was capable of enforcing a claim against her father if she chose to* at the [time] or shortly after the events occurred." (Emphasis added.) Also, the alleged incident of incest between Cheryl and her biological father was not of long duration and frequency while she was of tender years such that it would be perceived as natural behavior; it did not involve threats of harm;[7] and he was not an authority figure on whom she was dependent.[8] *Cf. Hammer*, 142 Wis. 2d. at 261-62, 418 N.W.2d at 24-25. Moreover, the record does not indicate that Cheryl repressed her memory of this incident—her social worker stated that she has been aware of the incident since it occurred. Even though Cheryl "could not consent" to having sexual intercourse with her father, she certainly was capable of asserting a claim against him.

We recognize that for reasons of public policy, § 893.587, STATS., was created to "provide adequate protection to children who have been harmed because

---

[7] Although Cheryl maintains that she was in no position to consent, her own deposition testimony reveals that Robert B. did not threaten her or force her to go to his bedroom. She describes the incident as: "He said, 'Do you want to do this?' And I said, 'Well, why not?' And he said, 'Well'—and then he put his arms around me and kissed me some more, and I went with him down the hall, and that's it."

[8] Again, the incident occurred once when Cheryl was an independent adult who was also a college graduate and a commissioned officer in the service.

of a most egregious violation of the parent/child relationship." *Pritzlaff*, 194 Wis. 2d at 321, 533 N.W.2d at 788 (quotations omitted) (quoting *Hammer*). The court further explained, however, that the statement in *Hammer* that a

> "claimant ha[s] leeway to not start action until it knows more about the injury and its probable cause," does not mean that a plaintiff can delay action until the extent of the injury is known, but only, consistent with the explanation of the discovery rule . . . that the statute of limitations does not begin to run until *the plaintiff has sufficient evidence that a wrong has indeed been committed by an identified person.*

*Pritzlaff*, 194 Wis. 2d at 320-21, 533 N.W.2d at 787 (quoted source omitted) (emphasis added). Here, Cheryl knew, since she left Milwaukee nineteen years ago, that a wrong—sexual intercourse—had been committed by an identified person—her natural father, Robert. Although she failed to discuss it with anyone until May 1993 when she told her great aunt, she nevertheless was aware that a wrong had been committed by an identified person. The discovery rule does not allow the statute of limitations to be tolled under these circumstances.

Moreover, our decision is consistent with the public policy concerns articulated in *Pritzlaff*. "[T]he discovery rule will apply only when allowing meritorious claims outweighs the threat of stale or fraudulent actions." *Id.* at 322, 533 N.W.2d at 788. The supreme court further explained:

> Any time a claim is raised many years after the injury occurred, the potential for fraud is exacerbated. However, in most cases that potential

558

is at least limited by the fact that the plaintiff is suffering from physical symptoms that a jury can see evidence of and which can be directly traced to the tortious conduct. . . . [H]ere the alleged damages are all "emotional" and "psychological," with the plaintiff's experts claiming that damage exists and was caused by the defendant, and the defendant left in the position of attempting to prove either that the plaintiff is not "emotionally damaged" or that he is not the cause of that damage. "While some courts may have blind faith in all phases of psychiatry, this court does not. Nor are we convinced that even careful cross-examination in this esoteric and largely unproven field is likely to reveal the truth."

Such circumstances are ripe for fraudulent claims even when the alleged cause of the injury occurred only weeks prior to the initiation of suit. When one adds to this that "this court has frequently been dismayed by the examination of trial court records which showed a marked propensity of those who purport to have psychiatric expertise to tailor their testimony to the particular client whom they represent," fraud becomes a distinct possibility.

*Id.* at 322-23, 533 N.W.2d at 788 (quoted source omitted) (citations omitted).

██

Similarly, to allow this claim to move forward would result in an equal, if not more compelling, violation of public policy. Here, Cheryl brought the claim approximately twenty years after the alleged incident occurred. In addition, Robert is now deceased and cannot deny or verify the claim. Although Cheryl was discussing the episode with her social worker while Robert was alive, the allegations were not brought until after Cheryl learned that she was

expressly disinherited from her biological father's estate. The balance does not weigh in Cheryl's favor. Extending the discovery rule to this case would cause unfairness to the defendant's estate which would be forced to attempt to defend a suit for alleged emotional and psychological injuries where the alleged conduct took place twenty years ago. We conclude that the threat of stale or fraudulent actions outweighs allowing claims of this nature.

*By the Court*.—Order affirmed.